### IN THE UNITED STATES DISTRICT
### FOR THE NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| JOHN KOE, | : | CASE NO. 1:22-cv-1455-DAP |
| | : | |
| Plaintiff | : | JUDGE DANIEL A. POLSTER |
| | : | |
| v. | : | |
| | : | |
| UNIVERSITY HOSPITALS HEALTH | : | |
| SYSTEM, INC., et al. | : | |
| | : | |
| Defendants. | : | |

### DEFENDANTS' MOTION FOR A PROTECTIVE
### ORDER SEEKING AN ORDER THAT REQUIRES PLAINTIFF
### TO COMMUNICATE ONLY WITH DEFENDANTS' COUNSEL
### OF RECORD WITH RESPECT TO THIS LITIGATION

Pursuant to Rule 26(c) of the Federal Rules of Civil Procedure, Defendants University Hospitals Health Systems, Inc. ("UHHS") and University Hospitals Cleveland Medical Center ("UHCMC") (UHHS and UHCMC are collectively, "Defendants") by and through undersigned counsel, respectively move this Court for a protective order (1) prohibiting Plaintiff John Koe ("Plaintiff") from communicating directly with Defendants' officers, Defendants' employees, and Defendants' affiliates; and (2) ordering Plaintiff to direct all communications concerning this lawsuit to Defendants' counsel of record in this matter.

Courts within this Circuit and other Federal Circuits issue protective orders pursuant to Rule 26(c) addressing inappropriate communications with *pro se* plaintiffs directly to defendants. *See Yao v. Oakland Univ.*, No. 2:21-cv-10523, 2022 U.S. Dist. LEXIS 11428 (E.D. Mich. Jan. 20, 2022). The *Yao* court issued an order identical to the order sought by Defendant because the *Yao* court found that "it is best practice for pro se plaintiffs to communicate directly with opposing counsel rather than with defendants." *Id.* at *3. The court found that such a practice

"promotes efficiency, avoids potential annoyance, confusion, undue burden, or harassment toward defendants, and prevents inappropriate communications between the parties." *Id.*

Since Defendants filed their motion to dismiss in this matter, Plaintiff has refused to communicate directly with Defendants' counsel of record. Rather, Plaintiff has sent over twenty emails that copied Defendants' Chief Legal Officer. In addition to these emails to Defendants' Chief Legal Officer, Plaintiff has communicated directly with multiple UHCMC employees, without copying counsel, on matters directly relating to this lawsuit. Finally, prior to filing this lawsuit, Plaintiff filed multiple charges against Defendants in state and federal agencies and his constant communications with Defendants' employees resulted in a cease and desist letter issued by Defendants' counsel in late 2021.

This Motion is based on the Declaration of Counsel and the attached Memorandum in Support. Defendants' counsel sought to resolve this issue prior to filing this Motion, but Plaintiff refused to only communicate with Defendants' counsel of record.

Respectfully submitted,

*/s/ David A. Campbell*
David A. Campbell (0066494)
Donald G. Slezak (0092422)
Lewis Brisbois Bisgaard & Smith, LLP
1375 E. 9th Street, Suite 2250
Cleveland, OH 44114
Phone: (216) 298-1262
Fax: (216) 344-9421
david.a.campbell@lewisbrisbois.com
donald.slezak@lewisbrisbois.com

*Attorneys for Defendants*

## MEMORANDUM IN SUPPORT

### I.   INTRODUCTION

This Court has not yet ruled that *Pro Se* Plaintiff John Koe ("Plaintiff") may proceed anonymously, but this Motion will not disclose Plaintiff's identity.  However, before filing this lawsuit anonymously, Plaintiff has filed numerous charges with state and federal agencies against Defendants University Hospitals Health Systems, Inc. ("UHHS") and University Hospitals Cleveland Medical Center ("UHCMC") (UHHS and UHCMC are collectively, "Defendants").  The charges are not anonymous.

Relevant to this motion, Plaintiff aggressively pursued the charges by contacting Defendants' employees via text, phone, and other means.  Multiple employees complained of the harassment resulting from Plaintiff's contacts to Defendants and a cease and desist letter was issued to Plaintiff in late 2021.  Since Defendants filed their motion to dismiss in this lawsuit, Plaintiff has continued to directly contact Defendants' employees, without copying Defendants' counsel, to address lawsuit issues.  Finally, when Plaintiff has communicated with Defendants' counsel of record on this lawsuit, he has always copied Defendants' Chief Legal Officer on the communication.

Courts within this Circuit and other Federal Circuits issue protective orders pursuant to Rule 26(c) addressing inappropriate communications with *pro se* plaintiffs directly to defendants. *See Yao v. Oakland Univ.*, No. 2:21-cv-10523, 2022 U.S. Dist. LEXIS 11428 (E.D. Mich. Jan. 20, 2022).  Relevant to this Motion, the *Yao* court issued an order identical to the order sought by Defendant because the *Yao* court found that "it is best practice for pro se plaintiffs to communicate directly with opposing counsel rather than with defendants."  *Id.* at *3.  The court found that such a practice "promotes efficiency, avoids potential annoyance, confusion, undue

burden, or harassment toward defendants, and prevents inappropriate communications between the parties." *Id.*

Accordingly, based on this Court's authority to issue a protective order pursuant to Rule 26(c) to protect Defendants from "annoyance, embarrassment, oppression, or undue burden or expense," this Court should issue an order (1) prohibiting Plaintiff John Koe ("Plaintiff") from communicating directly with Defendants' officers, Defendants' employees, and Defendants' affiliates; and (2) ordering Plaintiff to direct all communications concerning this lawsuit to Defendants' counsel of record in this matter. Fed. R. Civ. P. 26(c); *see also Yao v. Oakland Univ.*, No. 2:21-cv-10523, 2022 U.S. Dist. LEXIS 11428, *3 (E.D. Mich. Jan. 20, 2022).

## II.   **RELEVANT FACTS**

### A.   **Relevant Procedural Background.**

This lawsuit arises out of Plaintiff's termination from a residency program on April 23, 2021. (ECF #1, pgs. 6 and 10-11). Plaintiff alleges that his termination from the residency program was due to either his sex or disability status. (ECF #1, pg. 4). Plaintiff has filed the complaint anonymously under the pseudonym John Koe. (ECF #1, pg. 1). Plaintiff has filed a motion to proceed in forma pauperis (ECF #2), but he has not filed a motion to proceed anonymously.

Defendants have filed a motion to dismiss the Complaint. (ECF #3). On the day the motion to dismiss was filed, Plaintiff immediately reached out to Defendants' counsel and disclosed his true identity. (Declaration of David Campbell at ¶ 8 (hereinafter "Dec. Campbell at __") (attached as Exhibit 1). Thereafter, Plaintiff has communicated directly with Defendants' employees utilizing an email address that identifies Plaintiff by his real name. (Dec. Campbell at ¶ 9).

**B.** **The Number And Substance Of Plaintiff's Direct Communications To Defendant.**

Since the filing of Defendants' motion to dismiss, Plaintiff has followed three forms of communications with Defendants regarding this lawsuit: (1) Eighteen emails under Plaintiff's normal email address that were sent to both of Defendants' counsel of record that are copied to Defendants' Chief Legal Officer; (2) four emails sent to only one of Defendants' counsel of record with a copy to Defendants' Chief Legal Officer; (3) two emails to Defendants' counsel of record copying Defendants' Chief Legal Officer via the anonymous email listed on the Complaint; and (4) an unknown number of emails, phone calls and texts directly to Defendants' employees without a copy to Defendants' counsel of record. (Dec. Campbell at ¶ 10).

The emails sent by Plaintiff are inappropriate. (Dec. Campbell at ¶ 16). Examples of some of the emails are attached as Exhibit C to the Declaration. For example, Plaintiff sent a snide email directly to one of Defendants' employees attacking the employee's grammar usage, suggesting an article on "professional development", and making a comment that the alleged grammatical issue was the result of sleep deprivation: "I recall you were very sleep deprived and stressed at the time…" (Dec. Campbell at ¶ 17 and Exhibit C).

Another email from Plaintiff directly to one of Defendants' employees was sent to intimidate the employee regarding individual liability under Ohio law, encourage the employee to distance himself from Defendants' legal representation, and suggested that the employee obtain individual counsel:

> "Please be aware that the hospital legal team or their outside counsel does not represent you barring explicit approval from the Board of Directors…as it appears some people are under the impression that Ohio law did away with individual liability in employment law and the OCRC is not updated online, you should read HB 352 from last session noting very carefully the remarks about Genaro…Highly suggest reviewing with your own attorney."

(Dec. Campbell at ¶ 18 and Exhibit C).

Plaintiff's emails also directly attack Defendants' counsel, David Campbell, accusing him of fraud, discrimination, and other false conduct. (Dec. Campbell at ¶ 19). For example, Plaintiff stated the following about Mr. Campbell in an email sent directly to UHHS' Chief Legal Officer:

> "note my sympathy to the issue regarding a subjective statement that could bind UH by an individual [David Campbell] who has exhibited discriminatory animus; also note my explicitly identification of the fraudulently altered documents), I am, unlike Mr. Campbell, not bound strictly by the Rules of Professional Conduct (e.g. Rule 4.2)."

(Dec. Campbell at ¶ 19 and Exhibit C).

Plaintiff's comments are clearly meant to drive a wedge between Mr. Campbell and Defendants in an effort to have Defendants replace Mr. Campbell as counsel in this matter:

> "The fact that Mr. Campbell is personally implicated presents a substantial conflict of interest or at the very least the appearance of a conflict of interest. While it is not my place to second guess UH's business judgment in terms of its desired legal representation, I maintain that Mr. Campbell's continued involvement is at the very least prejudicial [to] UH's interests and efficient resolution in this matter. Please identify an alternative contact for UH given the need to contact UH directly."

(Dec. Campbell at ¶ 20 and Exhibit C).

Indeed, Plaintiff has gone so far as to threaten UHHS' Chief Legal Officer, legal team, and UHCMC staff that Mr. Campbell's involvement in this lawsuit is grounds for additional discrimination and retaliation claims:

> "Would it really serve to effect the purpose of the laws that protected civil rights if Employers or Covered Entities were free to act with impunity by hire a dirtbag attorney to retaliate on their behalf."

(Dec. Campbell at ¶ 21).

Plaintiff's conduct is inappropriate, insulting, malicious, and, at times, has suggested that Mr. Campbell's continued involvement in this matter will result in further inappropriate conduct from Plaintiff: "*So come on and chickity-check yo' self before you wreck yo' self.*" (emphasis in original); "Play stupid games, win stupid prizes appears to be apropos." (Dec. Campbell at ¶ 22).

Prior to filing this Motion, Defendants' counsel emailed Plaintiff and asked him to only communicate with Defendants' counsel of record regarding the lawsuit. (Dec. Campbell at ¶ 11). Plaintiff refused the request and threatened to file disciplinary charges against Defendants' counsel of record. (Dec. Campbell at ¶ 11). Copies of the communications are attached to the Declaration. (Dec. Campbell at Ex. A).

### C. **Plaintiff's Conduct Prior To The Filing Of This Lawsuit.**

Although proceeding anonymously in this lawsuit, Plaintiff filed numerous charges with state and federal agencies under his true identity prior to filing this lawsuit. (Dec. Campbell at ¶ 13). Plaintiff aggressively pursued the charges, contacting Defendants' employees to discuss his claims, to discuss the employees' testimony, and to seek admissions in favor of Plaintiff. (Dec. Campbell at ¶ 14). In fact, whenever an exhibit was filed with an agency by Defendants that demonstrated Plaintiff's misconduct, Plaintiff would obtain a copy of the exhibit and then immediately contact the employee identified in the exhibit. (Dec. Campbell at ¶ 14).

Many of Defendants' employees reported feeling harassed by Plaintiff's contacts. (Dec. Campbell at ¶ 15). As a result of the employee complaints, on December 2, 2021, Defendants' counsel sent a cease and desist letter to Plaintiff. (Dec. Campbell at ¶ 15). Relevant to this motion, the letter stated:

> The purpose of this letter is to formally demand that you cease and desist your communications and contact with UH employees. All

> employers have a duty under federal and state occupational safety and health statutes, as well as under the common law, to provide a safe workplace. Employers also have a common law duty to exercise reasonable care to avoid the risk of injury to third parties. This letter lays out the many attempts that UH has taken to permit you to obtain information from UH, but to protect UH employees from your harassment. However, those attempts have failed and this letter serves as formal notice that if you don't comply with the terms of this letter that UH will have no choice but to initiate court proceedings to enjoin you from further contact with UH or its employees.

(Dec. Campbell at Ex. A).

The cease and desist letter did not stop Plaintiff's direct communications to Defendants' employees. (Dec. Campbell at ¶ 23). To the contrary, Plaintiff filed multiple charges arising out of the letter and increased his contacts with Defendants' employees. (Dec. Campbell at ¶ 23). In fact, Plaintiff has taken direct actions to attempt to damage Defendants' residency program since the cease and desist letter was issued. (Dec. Campbell at ¶ 24). On one occasion, days before medical students ranked residency programs for matching, Plaintiff posted a false and disparaging statement on social media anonymously that included Plaintiff's charges that clearly identified him. (Dec. Campbell at ¶ 24). The posting was clearly intended to negatively impact the residency program's ranking by medical students. (Dec. Campbell at ¶ 24).

Most recently, the residency program participated in a Midwest Zoom recruiting conference where residents were supposed to move from Zoom room to room after spending thirty minutes with selected residency program. (Dec. Campbell at ¶ 25). Incredibly, Plaintiff attended the conference under his true identity and proceeded to remain in Defendants' zoom room for the entire program. (Dec. Campbell at ¶ 25). Plaintiff's attendance in the same zoom room for the length of the program was clearly meant to intimidate and frustrate the presenter. (Dec. Campbell at ¶ 25).

## III.  LAW AND ARGUMENT

### A.  Standard Of Review.

Rule 26(c)(1) of the Federal Rules of Civil Procedure permits a court to "issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense."  Fed. R. Civ. P. 26(c); *see also Yao v. Oakland Univ.*, No. 2:21-cv-10523, 2022 U.S. Dist. LEXIS 11428, *3 (E.D. Mich. Jan. 20, 2022).  A court will find good cause for the order upon the moving party demonstrating the facts underlying the need for the order.  *See Smolko v. Mapei Corp.*, No. 6:21-cv-25, 2022 U.S. Dist. LEXIS 44090, *8 (E.D. Ky. Feb. 10, 2022).

Courts within the Sixth Circuit and other Federal Circuits have issued protective orders pursuant to Rule 26(c)(1) to prohibit *pro se* plaintiffs from communicating directly with defendants or other parties to a lawsuit.  *See, e.g.*, *Yao v. Oakland Univ.*, No. 2:21-cv-10523, 2022 U.S. Dist. LEXIS 11428, *3 (E.D. Mich. Jan. 20, 2022); *see also Smolko v. Mapei Corp.*, No. 6:21-cv-25, 2022 U.S. Dist. LEXIS 44090, *8 (E.D. Ky. Feb. 10, 2022); *Simkus v. United Airlines*, No. 13-cv-04388, 2015 U.S. Dist. LEXIS 26398, *2-3 (N.D. Ill. Mar. 4, 2015).

As set forth below, Defendants' Motion should be granted because Plaintiff's direct communications with Defendants' officers and employees warrant a protective order pursuant to Rule 26(c)(1) of the Federal Rules of Civil Procedure.

### B.  Good Cause Exists To Issue A Protective Order Precluding Plaintiff From Directly Communicating With Defendants' Officers And Employees.

A protective order pursuant to Rule 26(c)(1) of the Federal Rules of Civil Procedure is appropriate due to Plaintiff's continuous inappropriate, direct communications with Defendants' officers and employees.  Most relevant to this Motion, the district court in *Yao v. Oakland Univ.*, No. 2:21-cv-10523, 2022 U.S. Dist. LEXIS 11428 (E.D. Mich. Jan. 20, 2022), recently enacted such a protective order because the *Yao* court found that "it is best practice for pro se plaintiffs to

9

communicate directly with opposing counsel rather than with defendants." *Id.* at *3. The court found that such a practice "promotes efficiency, avoids potential annoyance, confusion, undue burden, or harassment toward defendants, and prevents inappropriate communications between the parties." *Id.*

In this matter, Plaintiff is a physician and he most certainly can effectively prosecute this lawsuit through communications with counsel. However, as demonstrated in the attached declaration, Plaintiff has partaken in a prolonged attack on Defendants' and Defendants' employees. The conduct resulted in a cease and desist letter being issued to Plaintiff, but he refused to abide by the request. Rather, from the date of his discharge form the residency program through today, Plaintiff has continuously communicated directly with Defendants' employees via email, text and phone.

Once this lawsuit was filed, Plaintiff moved to copying Defendants' Chief Legal Officer on all communications that were sent to Defendants' counsel of record. However, when he desires, Plaintiff continues to communicate directly with Defendants' employees on facts relevant to this lawsuit. As set forth in the attached Declaration, Plaintiff is no longer in Defendants' residency program, but Plaintiff has continued his contacts with Defendants' employees

As set forth previously herein, Federal Courts – including the courts within the Sixth Circuit – issue protective orders pursuant to Rule 26(c)(1) of the Federal Rules of Civil Procedure to prohibit *pro se* plaintiffs from communicating directly with parties to a lawsuit. Consistent with the decision in *Yao v. Oakland Univ.*, No. 2:21-cv-10523, 2022 U.S. Dist. LEXIS 11428, *3 (E.D. Mich. Jan. 20, 2022), the United States District Court for the Eastern District of Kentucky issued a similar order in *Smolko v. Mapei Corp.*, No. 6:21-cv-25, 2022 U.S.

Dist. LEXIS 44090, *8 (E.D. Ky. Feb. 10, 2022). There, the Eastern District of Kentucky ordered a *pro se* plaintiff from communicating directly with the defendant's employees and from serving discovery requests directly to the defendant's employees. *Id.* at *8.

Similarly, the court in *Simkus v. United Airlines*, No. 13-cv-04388, 2015 U.S. Dist. LEXIS 26398, *2-3 (N.D. Ill. Mar. 4, 2015), issued a protective order pursuant to Rule 26(c)(1), holding that " a former employee suing his former employer pro se should not communicate with that party about the litigation other than through counsel." *Id.* at *2.

Although issuing the aforementioned protective orders under Rule 26(c)(1), the courts in *Yao, Smolko*, and *Simko* each firmly held that *pro se* plaintiffs must abide by Rule 4.2 of the district's respective rules of professional conduct, which preclude attorneys from communicating directly with parties represented by counsel. Indeed, the courts within the Sixth Circuit hold that:

> "[a]lthough a plaintiff, as a non-attorney, is not technically bound by the Rules of Professional Conduct, in her capacity as a *pro se* plaintiff she is nevertheless required from directly contacting the named defendants in accordance with Rule 4.2."

*Gaines-Hanna v. Farmington Pub. Sch. Dist.*, No. 04-CV-74910, 2006 U.S. Dist. LEXIS 14885, *6-7 (E.D. Mich. Mar. 31, 2006).

Plaintiff's direct communications with Defendants' officers and employees clearly violate Rule 4.2 of the Ohio Rules of Professional Conduct and warrant the issuance of a protective order.

Finally, the United States District Court for the Middle District of Tennessee addressed facts strikingly similar to this matter. *See Silva v. Aspen*, No. 3:21-cv-689, 2022 U.S. Dist. LEXIS 68300 (M.D. Tenn. Apr. 13, 2022). In *Silva*, the court addressed the many lawsuits filed by *pro se* Plaintiff Silva against various individuals in various forums arising out of claims

11

related to Taylor Swift. *Id.* In so doing, the court discussed the protective order issued to Silva in a related federal court litigation, which ordered plaintiff

> "not to communicate with defendant or affiliated companies, agents, or related individuals and, if such communication was necessary, contact shall only be made in writing through defendant's counsel, and any communications shall not contain any inappropriate statements, threats of any kind, or insults…"

*Id.* at n. 4.

Plaintiff's tactics are similar to the tactics in *Silva*. Plaintiff has filed numerous state and federal charges and he has pursued these charges relentlessly. While proceeding anonymously in this lawsuit, Plaintiff has communicated directly with Defendants' employees under his true identity. Finally, it is evidently clear that Plaintiff's desire is to damage Defendants; not to remedy any alleged wrongs. Plaintiff's conduct is intentional and designed to increase litigation costs and to cause maximum disruption within the hospital. Accordingly, Defendants have made a clear showing of good cause that a protective order is necessary to direct Plaintiff to refrain from communication with Defendants' officers and employees. Thus, Defendants' Motion should be granted.

## IV.    <u>**CONCLUSION**</u>

Based on the above-cited arguments and authorities, Defendants' Motion for a Protective

Order should be granted.  Accordingly, this Court should issue a protective order (1) prohibiting

Plaintiff John Koe from communicating directly with Defendants' officers, Defendants'

employees, and Defendants' affiliates; and (2) ordering Plaintiff to direct all communications

concerning this lawsuit to Defendants' counsel of record in this matter.

Respectfully submitted,

*/s/ David A. Campbell*
David A. Campbell (0066494)
Donald G. Slezak (0092422)
Lewis Brisbois Bisgaard & Smith, LLP
1375 E. 9th Street
Suite 2250
Cleveland, OH 44114
Phone: (216) 298-1262
Fax: (216) 344-9421
david.a.campbell@lewisbrisbois.com
donald.slezak@lewisbrisbois.com

*Attorneys for Defendant*

## <u>CERTIFICATE OF GOOD FAITH</u>

Pursuant to Rule 26(c)(1) of the Federal Rules of Civil Procedure, Defendants certify that they have attempted to confer with Plaintiff regarding the issues raised in this Motion in an effort to resolve the dispute without Court involvement.


<u>*/s/ David A. Campbell*</u>
David A. Campbell (0066494)

*One of the Attorneys for Defendant*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify on this 10th day of October, 2022, the foregoing was filed through the Court's CM/ECF electronic filing system and will be served upon *Pro Se* Plaintiff John Koe via email at john@johnkoe.org and via regular U.S. mail to John Koe, P.O. Box 527, Novelty, OH 44072.

*/s/ David A. Campbell*
David A. Campbell (0066494)

*One of the Attorneys for Defendant*

# EXHIBIT 1

# IN THE UNITED STATES DISTRICT
## FOR THE NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| JOHN KOE, | : | CASE NO. 1:22-cv-1455-DAP |
| | : | |
| Plaintiff | : | JUDGE DANIEL A. POLSTER |
| | : | |
| v. | : | |
| | : | |
| UNIVERSITY HOSPITALS HEALTH | : | |
| SYSTEM, INC., et al. | : | |
| | : | |
| Defendants. | : | |

## DECLARATION OF DAVID A. CAMPBELL IN SUPPORT OF DEFENDANTS' MOTION FOR A PROTECTIVE ORDER SEEKING AN ORDER THAT REQUIRES PLAINTIFF TO COMMUNICATE ONLY WITH DEFENDANTS' COUNSEL OF RECORD WITH RESPECT TO THIS LITIGATION

I, David A. Campbell, being duly cautioned and sworn, hereby declare as follows:

1.   I am lead counsel for Defendants University Hospitals Health Systems, Inc ("UHHS") and University Hospitals Cleveland Medical Center ("UHCMC") (UHHS and UHCMC are collectively, "Defendants") in this matter.

2.   This lawsuit was filed by Plaintiff John Koe ("Plaintiff"), a plaintiff seeking to proceed anonymously under a pseudonym.

3.   Plaintiff has filed a motion to proceed in forma pauperis, but he has not filed a motion to proceed anonymously.

4.   Plaintiff has disclosed his true identity to many of Defendants' employees since this lawsuit was filed. In fact, when communicating with Defendants since the lawsuit was filed, Plaintiff primarily utilizes his normal email address, with his true identity, rather than his anonymous email created for the filing of this Complaint.

5.   Although this Court has not approved the anonymous filing, this Motion and Declaration will not identify Plaintiff by name.

4864-6053-2535.1

1

6. This lawsuit arises out of Plaintiff's termination from a residency program on April 23, 2021. Plaintiff alleges that his termination from the residency program was due to either his sex or disability status.

7. Defendants have filed a motion to dismiss the complaint.

8. On the day that the motion to dismiss was filed, Plaintiff immediately reached out to me via telephone. Plaintiff identified himself on the phone call by his true identity.

9. Following the phone conversation, Plaintiff began to email me and Defendants' employees via an email that discloses his true identity.

10. Since the filing of Defendants' motion to dismiss, Plaintiff has followed three forms of communications with Defendants regarding this lawsuit: (1) Eighteen emails under Plaintiff's normal email address that were sent to both of Defendants' counsel of record that are copied to Defendants' Chief Legal Officer; (2) four emails sent to only one of Defendants' counsel of record with a copy to Defendants' Chief Legal Officer; (3) two emails to Defendants' counsel of record copying Defendants' Chief Legal Officer via the anonymous email listed on the Complaint; and (4) an unknown number of emails, phone calls and texts directly to Defendants' employees without a copy to Defendants' counsel of record. I am aware of these communications because some of Defendants' employees immediately notify counsel after contact from Plaintiff.

11. Prior to filing this Motion, Defendants' counsel asked Plaintiff, via email, to only communicate with Defendants' counsel of record regarding the lawsuit. Plaintiff refused the requests and threatened to file disciplinary charges against Defendants' counsel of record. Copies of the communications to and from Plaintiff regarding this motion are attached to this Declaration as Exhibit A.

12.     Defendants have met and conferred on this issue before filing this Motion. However, the concerns about Plaintiff's communications with Defendant's employees have been ongoing for more than a year before this lawsuit was filed.

13.     Prior to filing this lawsuit, Plaintiff filed numerous charges with state and federal agencies under his true identity. The charges not only name Defendants, but also Defendants' agent. In addition, the charges have been amended multiple times in order to keep the investigations ongoing.

14.     Plaintiff aggressively pursued the charges, contacting Defendants' employees to discuss his claims, to discuss the employees' testimony, and to seek admissions in favor of Plaintiff. In fact, whenever an exhibit was filed with an agency by Defendants that demonstrated Plaintiff's misconduct, Plaintiff would obtain a copy of the exhibit and then immediately contact the employee identified in the exhibit.

15.     Many of Defendants' employees reported feeling harassed by Plaintiff's contacts. As a result of the employee complaints, on December 2, 2021, Defendants' counsel sent a cease and desist letter to Plaintiff. A copy of the cease and desist letter – with Plaintiff's identity redacted – is attached hereto as Exhibit B.

16.     Some examples of inappropriate emails sent by Plaintiff to counsel and Defendants' employees are attached as Exhibit C.

17.     For example, Plaintiff sent a snide email directly to one of Defendants' employees attacking the employee's grammar usage, suggesting an article on "professional development", and making a comment that the alleged grammatical issue was the result of sleep deprivation: "I recall you were very sleep deprived and stressed at the time…"

18.     Another email from Plaintiff directly to one of Defendants' employees was sent to intimidate the employee regarding individual liability under Ohio law, encourage the

employee to distance himself from Defendants' legal representation, and suggested that the employee obtain individual counsel: "Please be aware that the hospital legal team or their outside counsel does not represent you barring explicit approval from the Board of Directors…as it appears some people are under the impression that Ohio law did away with individual liability in employment law and the OCRC is not updated online, you should read HB 352 from last session noting very carefully the remarks about Genaro…Highly suggest reviewing with your own attorney."

19.     Plaintiff's emails also directly attack me, accusing me directly of fraud, discrimination, and other false conduct. For example, Plaintiff stated the following about me in an email sent directly to UHHS' Chief Legal Officer: "note my sympathy to the issue regarding a subjective statement that could bind UH by an individual [David Campbell] who has exhibited discriminatory animus; also note my explicitly identification of the fraudulently altered documents), I am, unlike Mr. Campbell, not bound strictly by the Rules of Professional Conduct (e.g. Rule 4.2)."

20.     Plaintiff's comments are clearly meant to drive a wedge between myself and my client in an effort to have my client replace me as counsel in this matter: "The fact that Mr. Campbell is personally implicated presents a substantial conflict of interest or at the very least the appearance of a conflict of interest. While it is not my place to second guess UH's business judgment in terms of its desired legal representation, I maintain that Mr. Campbell's continued involvement is at the very least prejudicial [to] UH's interests and efficient resolution in this matter. Please identify an alternative contact for UH given the need to contact UH directly."

21.     Indeed, Plaintiff has gone so far as to threaten UHHS' Chief Legal Officer, legal team, and UHCMC staff that my involvement in this lawsuit is grounds for additional discrimination and retaliation claims: "Would it really serve to effect the purpose of the laws

that protected civil rights if Employers or Covered Entities were free to act with impunity by hire a dirtbag attorney to retaliate on their behalf."

22.     Plaintiff's conduct is inappropriate, insulting, malicious, and, at times, has suggested that my continued involvement in this matter will result in further inappropriate conduct from Plaintiff: "*So come on and chickity-check yo' self before you wreck yo' self.*" (emphasis in original); "Play stupid games, win stupid prizes appears to be apropos."

23.     The cease and desist letter did not stop Plaintiff's direct communications to Defendants' employees.  To the contrary, Plaintiff filed multiple charges arising out of the letter and increased his contacts with Defendants' employees.

24.     In fact, Plaintiff has taken direct actions to attempt to damage Defendants' residency program since the cease and desist letter was issued.  On one occasion, days before medical students ranked residency programs for matching, Plaintiff posted a false and disparaging statement on social media anonymously that included Plaintiff's charges that clearly identified him.  The posting was clearly intended to negatively impact the residency program's ranking by medical students.

25.     Most recently, the residency program participated in a Midwest Zoom recruiting conference where residents were supposed to move from Zoom room to room after spending thirty minutes with selected residency program.  Incredibly, Plaintiff attended the conference under his true identity and proceeded to remain in Defendants' zoom room for the entire program.  Plaintiff's attendance in the same zoom room for the length of the program was clearly meant to intimidate and frustrate the presenter.

26.     Plaintiff's continued inappropriate, direct communications with Defendants' officers and employees will continue unless this Court issues an order precluding Plaintiff from communicating with Defendants' officers and employees.

Pursuant to 28 U.S.C. § 1746, I have read the foregoing declaration and I affirm under the penalty of perjury under the laws of Ohio and the United States of America that the foregoing is true and accurate to the best of my knowledge, information, and belief.

David A. Campbell

October 10, 2022

Date

# EXHIBIT A

**From:** Campbell, David A. (Cleveland) <David.A.Campbell@lewisbrisbois.com>
**Sent:** Monday, October 3, 2022 10:32 AM
**To:** john@johnkoe.org
**Cc:** Slezak, Donald <Donald.Slezak@lewisbrisbois.com>; Campbell, David A. (Cleveland) <David.A.Campbell@lewisbrisbois.com>
**Subject:** John Koe v. UHHS, CASE NO. 1:22-cv-1455-DAP

Mr. Koe, since Defendants University Hospitals Health Systems, Inc. ("UHHS") and University Hospitals Cleveland Medical Center ("UHCMC") (UHHS and UHCMC are collectively, "Defendants") filed their Motion to Dismiss and counsel made an appearance in the captioned-lawsuit, you have repeatedly communicated directly with Defendants' employees on the case. I welcome you to review the receive decision in Yao v. Oakland University, Case No. 2:21-cv-10523, 2022 U.S. Dist. LEXIS 11428 (E.D. Mich. Jan. 20, 2022), where the district court imposed a protective order on a pro se plaintiff that required the pro se plaintiff to only communicate on the lawsuit with defendant's counsel of record.

I am sending you this email in the hopes that we can reach an agreement with you on this issue without the need for a motion. As you know, a cease and desist letter was sent to you in 2021 due to these same issues. We hope that a motion for a protective order is necessary, but please let me know.

Thanks.


David A. Campbell
Partner
Lewis Brisbois
Phone: 216-298-1261
Cell: 216-385-5347


**David Campbell**
**Partner**
Cleveland
216.298.1261 or x2161261

**From:** Campbell, David A. (Cleveland) <David.A.Campbell@lewisbrisbois.com>
**Sent:** Tuesday, October 4, 2022 12:13 PM
**To:** [Email Address Redacted]
**Cc:** Campbell, David A. (Cleveland) <David.A.Campbell@lewisbrisbois.com>; Slezak, Donald
<Donald.Slezak@lewisbrisbois.com>
**Subject:** RE: [EXT] Re: Follow-Up on Request to Exercise Candor / Duty of Candor Toward
the Court

Are you going to respond to my email on communications only with counsel?  Should we
assume since you copied our client yet again that you will not agree?

As to an extension, please let us know what type of extension you need.

Thanks.

David A. Campbell
Partner
Lewis Brisbois
Phone:  216-298-1261
Cell:  216-385-5347


**David Campbell**
**Partner**
Cleveland
216.298.1261 or x2161261

**From:** [Identity Redacted]
**Sent:** Tuesday, October 4, 2022 3:04 PM
**To:** Campbell, David A. (Cleveland) <David.A.Campbell@lewisbrisbois.com>
**Cc:** Slezak, Donald <Donald.Slezak@lewisbrisbois.com>; Adelman, Harlin
<harlin.adelman@uhhospitals.org>; [Identity Redacted]
**Subject:** Re: [EXT] Re: Follow-Up on Request to Exercise Candor / Duty of Candor Toward the
Court

_Via Electronic Mail_

October 4, 2022

Donald Slezak, Esq.
David Campbell, Esq.

Lewis Brisbois Bisgaard Smith, Cleveland Office
1375 E. 9th Street
Suite 2250
Cleveland, OH 44114

-and-

University Hospitals Health System, Inc.
c/o Harlin G. Adelman, Chief Legal Officer

Dear Mr. Campbell et al,

I have included a single representative for University Hospitals on my communications because I
cannot trust that you are relaying communications to your client based on your less than good
faith dealings with me over the past year.

I afforded you repeat opportunities to act like the legal professional you purport to be. You have
repeatedly failed to do so.

Your misrepresentations during federal investigations, your intimidating and coercive threats,
your prior threat of frivolous legal action and professional sanctions to gain an advantage, your
conduct aimed at and effective denying me a full and fair opportunity to rebut in the EEOC
process, your refusal to expound on any proposal, your refusal to provide me with any
information on the settlement you claim was discussed, your other continued gainsaying
characterizations, and your failure to exercise candor toward tribunals and now the court all
serve as ample objective basis for my inability to extend any trust to you.

You and your client are aware of my position on your retaliatory, discriminatory, frivolous, and extortive cease-and-desist letter.

I note again the fact that your continued involvement in this matter precludes or at least impedes any swift resolution of this matter.
I cannot trust you to relay that message to your client based on the conduct that you have demonstrated for over a year.

My inclusion of Mr. Adelman on communications to counsel is not unreasonable under these circumstances.
I do not believe I have not sought a response from Mr. Adelman since your failure to enter an appearance was clarified.

To the extent that you asking me to trust that you, Mr. Campbell, your scorched earth campaign burned that bridge long ago and  I do not take your threat of a motion kindly.

While the Yao court may have in that instance found "it is best practice for pro se plaintiffs to communicate directly with opposing counsel rather than with defendants" in that case, stating it "promotes efficiency, avoids potential annoyance, confusion, undue burden, or harassment toward defendants, and prevents inappropriate communications between the parties" such reasoning would be inapplicable here. Yao is distinguishable, but to the extent that it may for the sake of argument be applicable I did attempt to communicate with you directly rather than Defendants, but you acted in a manner that in no way can be said to accord with promoting efficient and equitable resolution of this mater. No, instead, you undertook a scorched earth campaign of harassment against me. You have only introduced annoyance and confusion. Your communications to me have been distinctly inappropriate and contrary to the Rules of Professional Conduct.

To the extent that you wanted all communications routed through you, perhaps you have should have not undertaken action to interfere with my privileged relationships including those with my legal representatives. Unlike *Yao*, I did respect my own legal representatives' directive to not communicate with UH. Likewise, my communications with any employees of UH have been necessary because of your nonsense.

Obviously, I do not consent to any such motion or invite any sanctions or threat thereof. However, if you insist on making your conduct a very pertinent issue before the court, I will naturally brief the court in detail and with evidence on the grounds which give rise to my inability to trust you and continued opposition to your involvement in this matter.

I defer to your expertise, but I do not think providing me with that opportunity would ultimately serve your client's interests as they have continued to authorize, condone, and ratify your conduct and making your conduct an issue may arguably undermine any privilege.

You and your client appear to fail to recognize that I have not filed a disciplinary complaint despite your continued violations of the professional standards governing your profession. You and your client appear to fail to recognize that I did not file a suit against LBBS on August 15,

2022. I did so in the interest of not inviting further harassment at your hands and in the interest of resolution with the party that appeared ultimately best situated to provide the remedies (i.e. "University Hospitals").

In other words, despite having grounds to file complaints with the ODC (but not an obligation as I am not an attorney) and legal claims against you or LBBS, I did not do so understanding that course of action would amount to a quixotic side quest that would not provide the relief I am ultimately seeking.

You and your client are aware that Rule 3.7(a) states "A lawyer shall not act as an advocate at a trial in which the lawyer is likely to be a necessary witness unless one or more of the following applies: [reasons omitted because they do not apply]" and that you will be a necessary witness.

Ultimately, if your client actually wishes to resolve this matter, you by your conduct and with your ego present are not advancing your client's goals. While you have made it clear that you would find years of litigation "fun", I am not sure that would be grounds for not recusing yourself in this matter. If you want to continue to stand in the way of your client's ability to resolve this matter, I will take appropriate action.

Please note that I have extended the benefit of the doubt and the same courtesy I initially afforded to you to Mr. Slezak understanding that Rule 3.7 and its comments do not prohibit a firm from continuing representation.

In short, I have afforded Mr. Slezak a blank slate and assumed that he is in fact a legal professional rather than tainted by whatever may have rubbed off from you. I suggest you set your ego aside and let him step up to the plate.

Sincerely,
[True Identity Redacted]

# EXHIBIT B



David A. Campbell
1375 E. 9th Street, Suite 2250
Cleveland, Ohio 44114
David.A.Campbell@lewisbrisbois.com
Direct: 216.298.1261

December 2, 2021

**VIA E-MAIL**

[Name Redacted]
[Street Redacted]
[City and State Redacted]
[Email Address Redacted]

     Re:    Cease and Desist Notice

Dear [Name Redacted]:

As you know, this law firm represents University Hospitals Cleveland Medical Center ("University Hospitals" or "UH") and UH employees with respect to the various charges that you have filed both during your employment with UH and after you discharge. We understand that you ended the attorney/client relationship that you had with your former attorney. However, if you have retained new counsel, please forward this letter to your new counsel and ask counsel to promptly review and respond.

The purpose of this letter is to formally demand that you cease and desist your communications and contact with UH employees. All employers have a duty under federal and state occupational safety and health statutes, as well as under the common law, to provide a safe workplace. Employers also have a common law duty to exercise reasonable care to avoid the risk of injury to third parties. This letter lays out the many attempts that UH has taken to permit you to obtain information from UH, but to protect UH employees from your harassment. However, those attempts have failed and this letter serves as formal notice that if you don't comply with the terms of this letter that UH will have no choice but to initiate court proceedings to enjoin you from further contact with UH or its employees.

You have seen the various position statements submitted by UH in response to the charges. As you know, UH has substantial evidence supporting its position that your discharge, and all actions taken by UH up to your discharge, were valid and proper. However, at the suggestion of the NLRB, UH opened settlement discussions with you that were designed to permit you to continue your medical career at a different medical center. I personally spoke to you regarding the settlement framework and made myself available to further discuss the issues. When you briefly retained counsel, she confirmed that UH's settlement framework was fair, reasonable and designed to amicably end this matter. Unfortunately, these settlement discussions

[Name Redacted]
December 2, 2021
Page 2

only led to you discharging your attorney, claiming investigator misconduct, and making demands that had no relation to the charges.

The settlement talks were also designed with the hope that the relationship between you and UH could amicably end with you agreeing to limit your future communications with UH. Since your discharge, you have contacted UH employees through email, text and other means. These communications have included express threats, implied threats, attacks on character, and calculated communications designed to upset the recipient. Prior to and after the settlement discussions, UH asked you to direct your communications to either me or UH in house counsel. On occasion, you have utilized this process and I obtained COBRA information for you. However, on most occasions, you simply bypassed me and had direct communications with your former co-workers, supervisors and managers. In addition, you would speak with me on issues and then misrepresent our discussions in your later contacts with UH employees. In simple terms, despite multiple requests that you process your requests for information and documents through me or in house counsel for UH, you have refused compliance.

The next step taken to try and curb your threats and harassment of UH employees was the charge process. UH has fully participated in the charge process and provided all documents and information the administrative agencies have sought during their investigation of your claims. However, as you recognized, UH has recently begun to label its exhibits attached to its position statements submitted to the administrative agencies as confidential. The stated purpose for this confidentiality designation was to avoid you obtaining copies of internal UH documents and then utilizing those documents to contact UH employees. UH initiated this procedure due to the fact that it was obvious that you were utilizing the charge process to harass former co-workers, supervisors and managers. Specifically, it became readily apparent that you were utilizing internal UH documents to identify UH employees to contact and threaten. The harassment includes express and implied threats, attacks on the character of the former employee, and general use of the administrative file to further your goal of disrupting the UH residency program. Unfortunately, the confidentiality designation only resulted in you accelerating your contacts with your former co-workers.

Your continuing contacts have reached the point of disruption and fear. Most troubling is that you have threatened ethics charges against many professionals. In a recent communication, you referred me to the AMA code of Medical Ethics. You incredibly claimed that UH designating exhibits as confidential to protect its employees from harassment violated UH's ethical obligations under the AMA Code of Medical Ethics. Please note that these same ethics are applicable to you. The Nine Principles of Medical Ethics include being "honest in all professional interactions," upholding the "standards of professionalism," respect of the rights of colleagues, and respecting the law.

Due to the fact that you are no longer employed by UH, the need for you to contact UH should be minimal or non-existent. UH hopes that you will agree to the following terms and avoid the need for litigation. If you are interested in avoiding litigation, please respond to the following questions in writing no later than December 6, 2021: (1) Will you agree to cease and desist all direct contact and communications with current employees of UH; (2) will you agree to direct all

[Name Redacted]
December 2, 2021
Page 3

needed UH communications through me.  If not me, is there another UH representative who you would direct communications through; (3) will you execute a written agreement confirming this process and agreeing that UH can file a consent injunction against you in the Cuyahoga County Court of Common Pleas if UH confirms your violation of the agreement; and (4) will you provide a list of all UH employees that you have contacted, directly or indirectly, since the discharge of your employment with UH.  The list of employees is important because it is evident that many UH employees you have contacted are suffering in silence due to your threats.  UH's hope is that this list can be utilized to verify that all UH employees know of their opportunities to seek assistance if needed.

UH hopes that further action is not necessary, and you will agree to the above terms.  If UH does not receive a timely response to these issues, UH will have no choice but to initiate formal proceedings in order to protect its employees from continuing harassment.

I look forward to your prompt response

.

Very truly yours,

David A. Campbell for
LEWIS BRISBOIS BISGAARD & SMITH LLP

4885-2862-3109.1

# EXHIBIT C

**Email 1: Sent By Plaintiff directly to Defendants' Employee**

From: **[NAME REDACTED]** <**[NAME REDACTED]**@gmail.com>
Date: Tue, Nov 2, 2021, 12:27 AM
Subject: Grammar Lesson
To: <nicolelighthouse1@gmail.com>

Hi Nicole,

I hope things are going swimmingly.

Preparing some documents, I was re-reading the emails you were apparently sending behind the scenes during the start of COVID-19. In one you erred by using err instead of air:

"[...] We have spoken to others that have worked directly with him as well that have <u>erred</u> similar concerns [...]" (emphasis added)

As to professional development, you may find the following article helpful:
https://grammarist.com/homophones/air-vs-err/

I recall you were very sleep deprived and stressed at the time, and I think that was the same day you wrote that H&P that Dr. Hahn described as essentially incomprehensible so maybe you were just having a rough day

In any case, as to professional development, you may find the following article helpful:
https://grammarist.com/homophones/air-vs-err/

*iuris praecepta sunt haec: honeste vivere, alterum non laedere, suum cuique tribuere* - Justinian

Best wishes,

**[NAME REDACTED]**

4864-7075-4103.1

**Email 2: Sent by Plaintiff to Defendants' Counsel and UHHS Chief Legal Officer**

*Via Electronic Mail*

September 27, 2022

David A. Campbell, Esq.
-and-
Donald Slezak Esq.

Lewis Brisbois Bisgaard Smith, Cleveland Office
1375 E. 9th Street
Suite 2250
Cleveland, OH 44114

CC:
Harlin G. Adelman. Esq.
Chief Legal Officer
University Hospitals Health System, Inc.

Dear Mr. Campbell,

The claim that UH "tried to hold a mediation [...] [but] [I] refused" is disingenuous and gainsaying at best.

First, you continue to characterize these as "my" issues, but in fact the continued maintenance of false and damaging statements or representations are issues that UH has a duty to remedy.

You also claimed: "UH has tried to have discussions with you on these issues, but the discussions result in charges and accusations of wrongdoing."

You, in role as representative for UH, coerced, threatened, and intimidated me when I requested this document over a year ago after you previously refused to clarify the party or parties you represented.  You interfered with privileged relationships. You then lied during federal investigation and to federal agencies.  You then on behalf of UH coercively or perhaps more precisely extortively threatened me with legal action in bad faith via the December 2, 2021 Cease-and-Desist letter where you threatened legal action.

To be clear I filed charges in response to your unrelenting harassing conduct including, but not limited to coercion, intimidation, threats after I granted you multiple opportunities to act like the legal professional you purport to be.

The aphorism "Play stupid games, win stupid prizes" appears to be apropos.

While you did in fact propose "mediation with the federal judge or a federal magistrate judge," you did so only after I explicitly outlined criminal conduct by agents or representatives of UH and on unreasonably short notice. Furthermore, when I asked you to provide information regarding that proposal (e.g. the process, the rules, the scope of the mediation, whether or not that mediation was binding, whether or not voluntarily agreeing to mediation involved a waiver or rights), you failed or refused to provide any clarifications.

As I reminded you on or around September 22, 2022, I have been trying to engage UH in resolution focused discussions for at least a year. When you claimed or feigned ignorance of improprieties by your client in September 2021, I gave you the benefit of doubt and implored you to exercise due diligence and investigate the events and circumstances surrounding my claims so that we could be on the same page and have an effective mediation.

I have explicitly identified issues with the final evaluation, and I have invited UH to propose or take prompt and appropriate remedial action to cure false, fictitious, and damaging statements on the final evaluation; correct the damaging omissions from the final evaluation; and ensure a non-discriminatory and non-retaliatory final evaluation is provided to me.

UH has refused to take prompt and appropriate remedy the false and damaging misrepresentations and omissions associated with the final evaluation despite a duty to do so. UH has undertaken this course of action either on your advice or with your blessing in order to coerce, compel, or coax me into agreeing to a binding process where I would be bereft of the benefit of counsel.

UH's refusal or failure to provide any information or clarification belies the claim that UH reasonably or in good faith offered to mediate and I refused. I declined to voluntarily agree to a binding process that you refused to clarify and especially when I am without the benefit of competent and diligent counsel.

Please provide me with corrected final evaluation and the answers to the other inquiries I posed.

Sincerely,
**[NAME REDACTED]**

**Email 3: Sent by Plaintiff to Defense Counsel with UHHS Chief Legal Officer CC'd**
*Via Electronic Mail*

July 20, 2022

Dear Mr. Campbell,

We discussed the possibility of talking this week after I reviewed my records.

Upon my review of the Complaint and other recent communications, I discovered that I had in fact outlined the specific issues with the final evaluation explicitly.

As I noted in the communication I was drafting while you sent this note, events and circumstances reasonably prevent me from feeling comfortable relying on your word. To you credit, I noted explicitly that you did treat me, with the exception of feigned ignorance--or alternatively an apparent admission of a lack of diligence/competence-- with at least a more cordial veneer.

I maintain my position--and my interests in maintaining-that UH's interests are not furthered by your continued handling of this matter given what some might described a a contentious history undermining my ability comfortably trust that you are dealing fairly--not to mention the the conflict of interest that arises from the fact that you were personally involved in the execution of challenged acts, omissions, and conduct alleged to be discriminatory and retaliatory.

I have thoroughly outlined my position with regards the issues with the final evaluation in writing, and your client appears to have relayed my further explicit clarifications to you.

While I am happy to discuss in the interest of facilitating the provision of an objective and accurate final evaluation untainted by discriminatory or retaliatory animus, I ask that UH substantively consider and plan to address the issues raised with the final evaluation before we talk.

If it is not too much trouble, I do request a written response so that I can have the benefit of a record to refer to and show any attorney should I feel it necessary to seek legal advice before we talk.

Sincerely,
/s/ **[NAME REDACTED]**

**Email 4: Forwarded Text Messages Plaintiff Sent Directly to Defendants' Employee**

-29-21  11:53am from **[NAME REDACTED]**

Hi Kurt, checking in to see again if you've received any clarification from the powers that be.

I left you a voicemail last Friday.

Please be aware that the hospital legal team or their outside counsel does not represent you barring explicit approval from the Board of Directors.  They should be telling you this, but I suspect they are not.

Additionally, as it appears some people are under the impression that Ohio law did away with individual liability in employment law and the ORC is not updated online, you should read HB 352 from last session noting very carefully the remarks about Genaro.

The lawmakers only removed individual liability for some causes of action.  Notably retaliation and intimidation still carry it.

Highly suggest reviewing with your own attorney:

Ohio Administrative Code 4757-5-02 Standards of ethical practice and professional conduct: clients/consumers of services.

Notable paragraphs are:

1.  (4), (B), (G)(1)

(G)(1) in particular:

LPCCs shall not practice, condone, facilitate or collaborate with any form of discrimination on the basis of (protected classes) (including) disability.

I remember we talked about ethics.

I don't think got into a discussion about it given the circumstances, but typically boards and societies for independent professionals in medicine or mental health do not respect the "Eichmann defense".

Here was inserted an attachment on Adolf Eichmann.

Hope you and yours are doing well and able to enjoy some of the beautiful weather.

Note; this information arrived via 9 text messages to me shortly before noon today (Wednesday, September 29, 2021).  Thank you!

Best Regards,

Kurt


Kurt Neumann

EAP Counselor

**Email 5: Email sent by Plaintiff to Defense Counsel, UHCMC staff, and UHHS Chief Legal
Officer**

*Via Electronic Mail*

September 26, 2022

Cathleen A. Cerny-Suelzer, MD
Program Director
CWRU/UHCMC Psychiatry Residency Program ("University Hospitals" / "UH")

Dear Dr. Cerny-Suelzer,

I am copying you on the below an email sent to UH this afternoon regarding your involvement in the unresolved
issues regarding the final evaluation and other program matters.

Sincerely,
**[NAME REDACTED]**

-----------------------

*Via Electronic Mail*

September 26, 2022

David A. Campbell, Esq.

-and-

Donald Slezak Esq.

Lewis Brisbois Bisgaard Smith, Cleveland Office
1375 E. 9th Street
Suite 2250
Cleveland, OH 44114

CC:
Harlin G. Adelman. Esq.
Chief Legal Officer
University Hospitals Health System, Inc.

Dear Mr. Campbell et al,

I am still awaiting inter alia:

1) Service of your "Dismiss" document in line with the FRCP, specifically Rule 5 (b)(2)(C).
2) A communication outlining or describing any resolution or resolution process UH is proposing.
3) Clarification from UH as to its position on any "standing" (in the GME/ACGME sense, not the legal sense)
4) Clarification from UH as to its position on any credit for PGY-2 rotations and while we are at it on PGY-1
rotations
5) Prompt and appropriate remedial action to cure the false and damaging statements and damaging omissions on
the final evaluation I was provided.
6) Prompt and appropriate remedial action undertaken by UH to allow me to obtain the letters of reference

necessary for a successful ERAS application.

Residency Programs can access applications--and thus they are effectively due--on Wednesday September 28, 2022 at 9 AM EST.

In order to have the best chance at being offered interviews and a position at another program I need responses to 3-4 above and UH to take action in line with 5-6.

I am available this evening if you wish to talk.

Thank you.

Sincerely,
**[NAME REDACTED]**

**Email 6: Emails Sent By Plaintiff to Defense Counsel, UHHS Chief Legal Officer and UHCMC Staff**

*Via Electronic Mail*

September 22, 2022

David A. Campbell, Esq.

-and-

Donald Slezak Esq.

Lewis Brisbois Bisgaard Smith, Cleveland Office
1375 E. 9th Street
Suite 2250
Cleveland, OH 44114

CC:
Harlin G. Adelman. Esq.
Chief Legal Officer
University Hospitals Health System, Inc.

Dear Mr. Campbell,

I had hoped to receive an email from you substantively addressing the inquiries I posed via email and via voicemail or otherwise explaining the process and implications of the process you are now proposing. As I noted, I have prior obligations and other matters to attend to starting this morning. I

To be clear, there is no "matching" deadline in the sense of "the Match". The effective "deadline" occurs when programs can begin to review ERAS applications on September 28, 2022. Match ranking and the match itself occur later.

If you will recall, I have been trying to engage your client via you in a meaningful discussion about resolution for approximately a year.

When you made it clear you were not aware of any improprieties, I gave you the benefit of doubt and implored you to exercise due diligence and investigate the events and circumstances believing strongly that mediation is most effective when parties are looking at the same facts.

I find it unfortunate that my invitation was rejected last year, and I find it unfortunate that UH steadfastly refused to make any attempt to resolve this matter or agree to a tolling agreement in the interest of resolution.

It is not clear to me what you mean by "this matter", what this "process" would entail, if this involves a waiver of any sort, or otherwise may create other issues. For example, it is not clear if

this could interfere with the the NLRB GC's jurisdiction in NLRB 08-CA-287186 where coercion regarding the final evaluation is alleged. As you are aware, the NLRB has taken the position that interfering with employee rights to pursue relief under the Act (e.g. by requiring employees to agree to binding arbitration) can constitute an unfair labor practice. If UH's position is that my final evaluation will only be discussed in mediation that is binding and outside of jurisdiction of the NLRB, that may run afoul of the NLRA under, without limitation, 8(a)(1) and 8(a)(4). Another major and unexplained inconsistency with your proposal that dawned on me in your silence is that the courts are uniformly reticent to be involved in issues that are academic like the final evaluation

I have explicitly identified issues with the final evaluation, and I have invited UH to propose or take prompt and appropriate remedial action to cure false, fictitious, and damaging statements on the final evaluation; correct the damaging omissions from the final evaluation; and ensure a non-discriminatory and non-retaliatory final evaluation is provided to me.

I must reiterate that request again.

Thank you.

To the extent that you were proposing mediation regarding the appropriateness of your continued role as representative for UH, I do not believe that is a matter appropriate for mediation or a question for the court. I believe you might be better served by seeking a consultation with your friends at the Ohio Office of the Disciplinary Counsel.

Sincerely,
**[NAME REDACTED]**

On Wed, Sep 21, 2022 at 6:29 PM **[NAME REDACTED]**
<**[NAMEREDACTED]**@gmail.com> wrote:
As I stated in my voicemails, I need to explain what you are proposing. I do believe this is precisely the type of information allowed by the comments of Rule 4.2.

I am not prepared to text/email and drive for an hour.

I have proposed a solution that allows a concrete record so there will be no dispute on the conversation or more precisely your communication.

So, please either provide me with an exhaustive and detailed explanation in writing to serve as a basis for questions or call me.

This seems, given your framing, the sort of thing that would be covered by the Rule 408 you mentioned approximately a year ago.

I understand trust is a two way street, but your sudden reticence to communicate in a manner that would be effective and efficient leaves me wanting.

One of the things I have appreciated about you is at least your machismo or bravado and zeal.

Sincerely,
**[NAME REDACTED]**

On Wed, Sep 21, 2022, 6:13 PM Campbell, David A. (Cleveland)
<David.A.Campbell@lewisbrisbois.com> wrote:
If you have questions, please email them and we will promptly respond. Thanks.

Sent from my iPhone

> **David Campbell**
> **Partner**
> **David.A.Campbell@lewisbrisbois.com**
>
> **T: 216.298.1261 F: 216.344.9421**

1375 E. 9th Street, Suite 2250, Cleveland, OH 44114 | **LewisBrisbois.com**

**Representing clients from coast to coast. View our locations nationwide.**

This e-mail may contain or attach privileged, confidential or protected information intended only for the use of the intended recipient. If you are not the intended recipient, any review or use of it is strictly prohibited. If you have received this e-mail in error, you are required to notify the sender, then de____ this email and any attachment from your computer and any of your electronic devices where the message is stored.

On Sep 21, 2022, at 6:08 PM, **[NAME REDACTED]**<**[NAME REDACTED]**@gmail.com> wrote:

Tell you what, Mr. Campbell, as this will be a conversation where I listen mainly, I will record our convo and send you a copy after.

On Wed, Sep 21, 2022, 5:57 PM Campbell, David A. (Cleveland)
<David.A.Campbell@lewisbrisbois.com> wrote:

I received your voicemail.  I think it is best that we email so there is a record of our conversations.  If you want to discuss the three issues that you have, then we are giving you the avenue – attend a mediation with the federal judge or a federal magistrate judge.  UH has tried to have discussions with you on these issues, but the discussions result in charges and accusations of wrongdoing.  The federal judge can mediate the matter and act as the intermediary between the two sides in order to avoid after-the-fact accusations.

Please let us know if you are interested.


Thanks.


David A. Campbell

Partner

Lewis Brisbois

Phone: 216-298-1261

Cell: 216-385-5347


**David Campbell**
**Partner**
**David.A.Campbell@lewisbrisbois.com**

**T: 216.298.1261 F: 216.344.9421**

1375 E. 9th Street, Suite 2250, Cleveland, OH 44114 | **LewisBrisbois.com**

**Representing clients from coast to coast. View our locations nationwide.**

This e-mail may contain or attach privileged, confidential or protected information intended only for the use of the intended recipient. If you are not the intended recipient, any review or use of it is strictly prohibited. If you have received this e-mail in error, you are required to notify the sender, then de... this email and any attachment from your computer and any of your electronic devices where the message is stored.

**From:** Campbell, David A. (Cleveland) <David.A.Campbell@lewisbrisbois.com>
**Sent:** Wednesday, September 21, 2022 5:30 PM
**To:** [NAME REDACTED]<[NAME REDACTED]@gmail.com>
**Cc:** McMahon, Seamus J. <Seamus.McMahon@UHhospitals.org>; Campbell, David A. (Cleveland) <David.A.Campbell@lewisbrisbois.com>
**Subject:** RE: [EXT] Fwd: Reminder: Programs May Begin Reviewing Applications and MSPEs on Sept. 28 at 9 a.m. ET


We have reviewed your many emails and understand the matching deadline that is upcoming. If you would like to discuss these issues, we would like to contact the federal judge or the federal magistrate judge and ask the judge to mediate a resolution of this matter this week or early next week. If you are interested in such a process, please let us know and we will reach out to the Court.

Thanks.

David A. Campbell

Partner

Lewis Brisbois

Phone: 216-298-1261

Cell: 216-385-5347

**David Campbell**
**Partner**
Cleveland
216.298.1261  or x2161261

**From:** [NAME REDACTED]<[NAME REDACTED]@gmail.com>
**Sent:** Wednesday, September 21, 2022 1:26 PM
**To:** Campbell, David A. (Cleveland) <David.A.Campbell@lewisbrisbois.com>; Slezak, Donald <Donald.Slezak@lewisbrisbois.com>
**Cc:** Adelman, Harlin <harlin.adelman@uhhospitals.org>; [NAME REDACTED]
**Subject:** [EXT] Fwd: Reminder: Programs May Begin Reviewing Applications and MSPEs on Sept. 28 at 9 a.m. ET

September 21, 2022

Dear UH via Mr. Campbell et al.,

While I am certain that Dr. Cerny-Suelzer is aware of this date, I wanted to remind you that applications are effectively due on September 28, 2022. Many programs will not consider applications submitted after that date.

UH has still not clarified, despite my previous requests, some other issues that need to be resolved. For example, my status, PGY-2 year, etc.

In light of previous threats and interference by UH or on behalf of UH, we should discuss my ability to seek letters of reference from physicians I worked with who are employed or affiliated with UH.

4864-7075-4103.1

Sincerely,

/s/**[NAME REDACTED]**

---------- Forwarded message ----------
From: **ERAS Communications** <erascommunications@email.aamc.org>
Date: Wed, Sep 21, 2022, 1:16 PM
Subject: Reminder: Programs May Begin Reviewing Applications and MSPEs on Sept. 28 at 9 a.m. ET
To: <**[NAME REDACTED]**@gmail.com>

Dear **[NAME REDACTED]**,

As a reminder, ERAS® September cycle residency programs may begin reviewing applications and Medical Student Performance Evaluations (MSPEs) on **Wednesday, Sept. 28 at 9 a.m. ET**. Applications submitted on or before Sept. 28 at 9 a.m. ET will display an application date of Sept. 28 to programs. Applications submitted after Sept. 28 will display the actual application date.

**Sharing and Adding Interview Information in MyERAS**

We encourage you to enter your interview invitations, even those received outside of ERAS, in the MyERAS calendar. This optional feature enables you to share all your interview information with your Designated Dean's Office (DDO) which may support your school's advising efforts for you and future applicants. If you choose to share this information, only your DDO will be able to access it. Programs will not see this information.

To learn more about this feature, we have outlined these steps to sharing and adding interview invitations in MyERAS.

**ERAS Client Technical Support Open Until 8 p.m. ET Sept. 27**

To better assist you, ERAS Client Technical Support has extended its hours and will be available Tuesday, Sept. 27 from 8 a.m. – 8 p.m. ET.

We're proud to support you on your journey to residency.

Sincerely,

Michele Oesterheld
Director, ERAS

---

**Need Help?** Contact ERAS Client Technical Support (202-862-6264) Monday – Friday, 8 a.m. – 6 p.m. ET.

Follow @ERASinfo on Twitter

This email was sent by: **Association of American Medical Colleges**
655 K Street NW, Ste 100 Washington, DC, 20001, USA

© 2022 AAMC |

**Email 7: Sent by Plaintiff to Defense Counsel and UHHS Chief Legal Officer**

Via Electronic Mail

September 26, 2022

David A. Campbell, Esq.

-and-

Donald Slezak Esq.

Lewis Brisbois Bisgaard Smith, Cleveland Office
1375 E. 9th Street
Suite 2250
Cleveland, OH 44114

CC:
Harlin G. Adelman. Esq.
Chief Legal Officer
University Hospitals Health System, Inc.

Dear Mr. Campbell et al,

I am still awaiting *inter alia*:

1) Service of your "Dismiss" document in line with the FRCP, specifically Rule 5 (b)(2)(C).
2) A communication outlining or describing any resolution or resolution process UH is proposing.
3) Clarification from UH as to its position on any "standing" (in the GME/ACGME sense, not the legal sense)
4) Clarification from UH as to its position on any credit for PGY-2 rotations and while we are at it on PGY-1 rotations
5) Prompt and appropriate remedial action to cure the false and damaging statements and damaging omissions on the final evaluation I was provided.
6) Prompt and appropriate remedial action undertaken by UH to allow me to obtain the letters of reference necessary for a successful ERAS application.

Residency Programs can  access applications--and thus they are effectively due--on Wednesday September 28, 2022 at 9 AM EST.

In order to have the best chance at being offered interviews and a position at another program I need responses to 3-4 above and UH to take action in line with 5-6.

I am available this evening if you wish to talk.

Thank you.

4864-7075-4103.1

Sincerely,
**[NAME REDACTED]**

On Sat, Sep 24, 2022 at 10:27 AM **[NAME REDACTED]** <**[NAME REDACTED]**@gmail.com> wrote:
Via Electronic Mail

September 24, 2022

David A. Campbell, Esq.

-and-

Donald Slezak Esq.

Lewis Brisbois Bisgaard Smith, Cleveland Office
1375 E. 9th Street
Suite 2250
Cleveland, OH 44114

CC:
Harlin G. Adelman. Esq.
Chief Legal Officer
University Hospitals Health System, Inc.

Dear Mr. Campbell,

I called you to discuss the final evaluation after I learned you had filed a "Dismiss" document.

I did not confirm receipt of your filing. Knowledge that you have filed a document is different and distinct than an opportunity to know the contents of that document.

As you know, I do not have access to CM / ECF, and I have not filed a request for access to CM / ECF pending action by the court.

In our conversation, I primarily sought to discuss your October 26, 2021 Position Statement and Exhibits.

As I noted in my email to Mr. Adelman, I requested permission to proceed under a pseudonym but did include sufficient details that would allow UH or any other involved parties (e.g. Dr. Cerny-Suelzer) to know Even if a plaintiff is allowed to proceed under a pseudonym, Defendants or parties are obviously entitled to and should know who is suing them in the interest of due process.

4864-7075-4103.1

In that same email thread, I notified UH via Mr. Adelman that I had not been served with your filing and asked that he ensure that you actually serve

I have not been emailing "various UH employees" but rather you, Mr. Slezak, Mr. Adelman (as UH), and Dr. Cerny-Suelzer (as a potential party). That has not obviated my request to proceed under a pseudonym which seeks to protect my privacy in the public realm given the heightened privacy interest in light of the specific privileges I identified in my filing in line with the Doe v. Porter precedent I cited.

In any case, I request that you actually follow the FRCP and effect service according to Rule 5 (b)(2)(C).

It does not seem appropriate or reasonable to waste the courts time with *ex parte* contact because an attorney, with the benefit of education and extensive experience in Federal court, could not be bothered to follow the FRCP and actually serve papers on a *pro se* plaintiff.

USPS is open on Saturday.  I believe 27106 E Oviatt Rd until 1400 and 2400 Orange Ave until 1600.

Thanks.

Sincerely,
/s/ **[NAME REDACTED]**

On Sat, Sep 24, 2022 at 6:31 AM Campbell, David A. (Cleveland) <David.A.Campbell@lewisbrisbois.com> wrote:

You have confirmed that you receive the motion – the day it was filed.  You checked the docket for our notices of appearances.  If you had a true need to be anonymous, you certainly are not going to be emailing various UH employees under your personal, identified email and letting them know that you are the anonymous filer.

We will advise the Court of this significant issue.

Thanks.

4864-7075-4103.1

David A. Campbell

Partner

Lewis Brisbois

Phone:  216-298-1261

Cell:  216-385-5347



**David Campbell**
**Partner**
**David.A.Campbell@lewisbrisbois.com**

**T: 216.298.1261 F: 216.344.9421**

1375 E. 9th Street, Suite 2250, Cleveland, OH 44114 | **LewisBrisbois.com**

**Representing clients from coast to coast. View our locations nationwide.**

This e-mail may contain or attach privileged, confidential or protected information intended only for the use of the intended recipient. If you are not the intended recipient, any review or use of it is strictly prohibited. If you have received this e-mail in error, you are required to notify the sender, then delete this email and any attachment from your computer and any of your electronic devices where the message is stored.

**From:** [NAME REDACTED]<[NAME REDACTED]@gmail.com>
**Sent:** Friday, September 23, 2022 8:39 PM
**To:** Campbell, David A. (Cleveland) <David.A.Campbell@lewisbrisbois.com>; Slezak, Donald <Donald.Slezak@lewisbrisbois.com>
**Cc:** Adelman, Harlin <harlin.adelman@uhhospitals.org>; [NAME REDACTED]<[NAME REDACTED]@gmail.com>
**Subject:** [EXT] "Dismiss" Service?

Via Electronic Mail

September 22, 2022

David A. Campbell, Esq.

-and-

4864-7075-4103.1

Donald Slezak Esq.

Lewis Brisbois Bisgaard Smith, Cleveland Office

1375 E. 9th Street

Suite 2250

Cleveland, OH 44114

CC:

Harlin G. Adelman. Esq.

Chief Legal Officer

University Hospitals Health System, Inc.

Dear Mr. Campbell,

I am still awaiting proper service of your "Dismiss" document.

It has not been delivered via mail, and I have no record of attempted service.

Please provide the USPS receipt.

Thank you.

Sincerely,

**[NAME REDACTED]**

## Email 8: Sent by Plaintiff to Defense Counsel, UHHS Chief Legal Officer and UHCMC Staff

*Via Electronic Mail*

September 20, 2022

Harlin G. Adelman. Esq.
Chief Legal Officer
University Hospitals Health System, Inc.

CC: (as a professional courtesy)
David Campbell, Esq.
Donald Slezak, Esq.
Cathleen A. Cerny-Suelzer, MD

Dear Mr. Adelman,

The purpose of my communication was to confirm that University Hospitals has in fact authorized Mr. Campbell to act on its behalf as its legal representative and to ensure that my communications regarding resolution were actually presented to University Hospitals.

I had no indication, besides Mr. Campbell's word, that he in fact was still representing University Hospitals. As I noted, he did not enter an appearance though I understand that he has done so. Thank you and Mr. Campbell for ensuring that the court's electronic filing system was updated to list Mr. Campbell, along with Mr. Slezak, as an attorney of record for University Hospitals and his full contact information.

I had and continue to have reasonable and good faith doubts that my requests and communications have not been accurately or precisely communicated to University Hospitals.

Though I have endeavored to conduct myself in a manner that is professional and in manner that is fair to the legal rights of UH (e.g. note my sympathy to the issue regarding a subjective statement that could bind UH by an individual who has exhibited discriminatory animus; also note my explicit identification of the fraudulently altered documents), I am, unlike Mr. Campbell, not bound strictly by the Rules of Professional Conduct (e.g. Rule 4.2). Even if I were, I am a party and the Comments for Rule 4.2, specifically [4] in relevant part makes it clear that:

"[4] Parties to a matter may communicate directly with each other."

If you feel uncomfortable receiving communications to UH directly given because you are an attorney, I am sympathetic to that fact, but UH has not identified another direct contact that I can trust.

Negotiations requires at least some modicum of trust. While I assumed Mr. Campbell was a legal professional and extended the trust backed by his professional license, his actions, omissions, and other conduct--which UH has had notice via charges and direct communications-- including violations of the Rules of Professional Conduct (e.g. Rule 4.4) has destroyed my ability to trust Mr. Campbell's word. To Mr. Campbell's credit, besides the feigned ignorance, our last communication was more at least on its face more pleasant.

I have learned, thanks to both physicians and other officials at UH or affiliated that incompetence, whether genuine or feigned, by purported professionals constitutes malice--in the colloquially sense of that word as well as the legal sense (e.g. reckless disregard).

The fact that Mr. Campbell is personally implicated presents a substantial conflict of interest or at the very least the appearance of a conflict of interest. While it is not my place to second guess UH's business judgement in terms

of its desired legal representation, I maintain that Mr. Campbell's continued involvement is at the very least prejudicial UH's interests and efficient resolution of this matter.

Please identify an alternate contact for UH given the need to contact UH directly. I imagine that the ultimately authority would be the Board of Directors, but I will defer to your expertise.

Please clarify if UH is taking the position that only Dr. Cerny-Suelzer in her individual capacity is situated to correct the final evaluation. While I disagree given that it falls within the scope of her employment as Program Director and UH has further authorized, ratified, or condoned her conduct, I am seeking clarification on UH's position. I am seeking that clarification so that I may protect my interests by taking the appropriate steps to join her in her individual capacity pending resolution of that issue. Out of respect for her interests, I have copied her on this communication.

I do look forward to a substantive response from UH regarding the final evaluation promptly whether directly or through one of your designated representatives.

Thank you.

Sincerely,
/s/ **[NAME REDACTED]**

## Email 9: Sent by Plaintiff to Defense Counsel, UHHS Chief Legal Officer, Attorneys Within UHHS; Legal Office, And UHCMC Staff

**From:** [NAME REDACTED] <[NAME REDACTED]@gmail.com
**Sent:** Monday, May 23, 2022 11:57 PM
**To:** Campbell, David A. (Cleveland) <David.A.Campbell@lewisbrisbois.com>
**Cc:** Compliance <Compliance@uhhospitals.org>; Adelman, Harlin <harlin.adelman@uhhospitals.org>; Seamus.McMahon@uhhospitals.org; marcie.manson@umiospitals.org; Cerny-Suelzer, Cathleen A <Cathleen.Cerny@uhhospitals.org>; robert.ronis@uhhospitals.org
**Subject:** [EXT] Answer to Your Inquiry


May 23, 2022

Dear Mr. Campbell,

As to the question you posed to the EEOC, you may find the answer in the ADA Title I Technical Assistance Manual:

The definition of "employer" includes persons who are "agents" of the employer, such as managers, supervisors, foremen, or others who act for the employer, such as agencies used to conduct background checks on candidates. Therefore, the employer is responsible for actions of such persons that may violate the law.

Or maybe just the statute:

The anti-retaliation provision refers to "any person" who retaliates. See 42 U.S. Code § 12203(a). The ADA adopts the definition of "person" from Title VII at 42 USC § 2000e(a). See 42 U.S. Code § 12111(7)

42 USC § 2000e(a) reads:
The term "person" includes one or more individuals, governments, governmental agencies, political subdivisions, labor unions, **partnerships**, associations, corporations, **legal representatives**, mutual companies, joint-stock companies, trusts, unincorporated organizations, trustees, trustees in cases under title 11, or receivers.

Additionally, the ADA defines Employer at 42 USC § 12111(5)(A):
The term "employer" means a person engaged in an industry affecting commerce who has 15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year, **and any agent of such person.**

ADA retaliation 42 USC § 12203(a) scopes using the language "person" and not employer.

The More You Know!

Did you really miss *Arias v. Raimondo*?
If so, it may be worth a read.

Would it really serve to effect the purpose of the laws that protected civil rights if Employers or Covered Entities were free to act with impunity by hire a dirtbag attorney to retaliate on their behalf?

Sounds like a recipe for the deprivation of federally protected civil rights including those under the ADA, GINA, and other anti-discrimination laws enforced by the Commision.

Maybe even better than a scheme that entails deprivation of federally protected civil rights using an Employee Assistance Program to interfere with rights protected by the ADA and fraudulently conceal discriminatory practices including conducting prohibited medical examinations/inquiries in violation of the ADA, requesting genetic information from employees in violation of the GINA, and intimidating, harassing, and retaliating against employees.

Feel free to pre-emptively correct your lack of candor to the EEOC.

*Usin' all my well-learned politesse,*
**[NAME REDACTED]**

## EMAIL 10: Sent by Plaintiff to Defense Counsel

**From: [NAME REDACTED] < [NAME REDACTED]>**@gmail.com
**Sent:** Monday, November 1, 2021 11:50 AM
**To:** Campbell, David A. (Cleveland) <David.A.Campbell@lewisbrisbois.com>; Young, Danielle
<Danielle.Young@lewisbrisbois.com>
**Subject:** [EXTERNAL] Re: Prevarication and Spoiliation

> **Caution:This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.**

Mr. Campbell,

Do you really think the Feds are stupid or do you just truly not care about the Rules of Professional Conduct?

*So come on and chickity-check yo' self before you wreck yo' self*

Sincerely,
**[NAME REDACTED]**