FILED
SEP 28 2026
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF OHIO
CLEVELAND

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| UNIVERSITY HOSPITALS CLEVELAND MEDICAL CENTER | ) | |
| Plaintiff. | ) | CASE NO. 1:25-cv-00339 |
| v. | ) | JUDGE DAVID A. RUIZ |
| NICHOLAS KRUDY, | ) | |
| Defendant. | ) | |

**DEFENDANT'S MOTION FOR SANCTIONS UNDER FED. R. CIV. P. 11**

Defendant Nicholas Krudy respectfully moves under Fed. R. Civ. P. 11(c)(2) for sanctions based on the specific papers and conduct identified below. The accompanying Memorandum supplies the governing authorities and record citations.

**1. Complaint, ECF No. 1**

**a. Rule 11(b)(2) — Attorney David A. Campbell**

Campbell signed and presented a Complaint that asserted federal-question jurisdiction because Plaintiff University Hospitals Cleveland Medical Center ("UH") sought relief under 28 U.S.C. §§ 1651 and 2201, although those statutes do not themselves supply federal jurisdiction or a substantive federal claim; represented that this action was "proper based on" *Conley v. Smith*, although *Conley* did not support that proposition; and characterized the prior lawsuits as dismissed "on the merits," although the February 23, 2024 order recited that the first action was dismissed without prejudice and expressly contemplated a later action under Defendant's legal name. These legal contentions are challenged under Rule 11(b)(2).

**b. Rule 11(b)(1) — Attorney Campbell and UH**

The Complaint is separately challenged under Rule 11(b)(1). It stated that "this filing is designed" to require advance approval before Defendant could pursue further lawsuits or charges and sought prospective restrictions extending beyond this Court to other courts, administrative agencies, law-enforcement bodies, and attorney-disciplinary fora. As detailed in the accompanying Memorandum, the Complaint was presented as a mechanism to deter and restrict Defendant's further resort to those processes, including protected discrimination-charge activity.

**2. Application for Entry of Default and supporting declaration, ECF Nos. 7 and 7-1 — Attorney Donald G. Slezak**

Slezak sought entry of default while his own supporting declaration disclosed that the summons and Complaint had been delivered "via process server to Defendant's P.O. Box," and the return stated "DELIVERED TO POST OFFICE." The governing service rules supplied no basis for certifying that this method completed service, triggered Defendant's response deadline, and permitted entry of default. This presentation is challenged under Rule 11(b)(2).

**3. Plaintiff's Reply in Support of its Application for Entry of Default, ECF No. 10 — Attorney Campbell**

After ECF No. 8 raised the service defect and the Court ordered UH to respond to Defendant's arguments or withdraw the default application, Campbell again advocated default. The authorities he supplied involved venue, certified mail, or ordinary mail following unsuccessful certified mail—not the disclosed method of a private process server delivering federal process to the post office for placement in a P.O. box. This later advocacy is challenged under Rule 11(b)(2).

**4. Plaintiff's Motion to Strike Defendant's Motion to Dismiss, ECF No. 13 — Attorney Campbell**

After ECF No. 12 identified the governing service rules and authorities and challenged the Complaint's jurisdictional and legal basis, Campbell again advocated default and represented that ECF No. 12 had failed to address service or provide authority that service was not perfected, although ECF No. 12 had done both. ECF No. 13 is challenged under Rule 11(b)(2) as later advocacy of the identified legal contentions on the fuller record then available.

Campbell is responsible for ECF Nos. 1, 10, and 13; Slezak is responsible for ECF Nos. 7 and 7-1. Gordon Rees Scully Mansukhani, LLP is responsible to the extent provided by Rule 11(c)(1). Consistent with Rule 11(c)(5)(A), Defendant seeks no monetary sanction against represented Plaintiff UH for a Rule 11(b)(2) violation; UH's asserted responsibility is limited to the independently alleged Rule 11(b)(1) violation.

Defendant respectfully requests that the Court find the Rule 11(b)(1) and (b)(2) violations identified above and detailed in the accompanying Memorandum and impose a sanction limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated.

Dated: August 31, 2026

Respectfully submitted,

Defendant, pro se

Nicholas Krudy
PO Box 527
Novelty OH 44072-0527

Tel: (330) 732-5001
Email: john@johnkoe.org

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| UNIVERSITY HOSPITALS CLEVELAND MEDICAL CENTER | ) | |
| Plaintiff. | ) | CASE NO. 1:25-cv-00339 |
| v. | ) | JUDGE DAVID A. RUIZ |
| NICHOLAS KRUDY, | ) | |
| Defendant. | ) | |

## MEMORANDUM IN SUPPORT OF MOTION FOR SANCTIONS

## I. INTRODUCTION

University Hospitals Cleveland Medical Center ("UH") commenced this federal action after Defendant Nicholas Krudy gave notice that he intended to bring his state-law employment discrimination claims in state court. UH's Complaint does not seek adjudication of a substantive federal right. Rather, it seeks a declaration that Krudy was a vexatious litigant and prospective restrictions on future lawsuits, administrative charges, grievances, disciplinary complaints, and other proceedings beyond this Court. By signing and filing that Complaint, Attorney David A. Campbell certified, after an inquiry reasonable under the circumstances, that its legal contentions were warranted by existing law or a nonfrivolous argument for changing it.

The Complaint itself reveals the central Rule 11(b)(2) defects. It pleads federal-question jurisdiction because UH seeks relief under 28 U.S.C. §§ 1651 and 2201, although those statutes presuppose independent jurisdiction. It asserts that the action is "proper based on" *Conley v. Smith*, although the court in *Conley* dismissed the comparable freestanding declaratory action. And it alleges that the prior lawsuits were dismissed "on the merits," although the February 23,

2024 order recited that the first action had been dismissed without prejudice, applied preclusion to the pseudonym issue, and expressly contemplated action filed in Krudy's legal name.

A separate certification issue arose when UH sought default. Attorney Donald G. Slezak signed ECF No. 7 and executed the supporting declaration at ECF No. 7-1, which disclosed that the summons and Complaint had been delivered "via process server to Defendant's P.O. Box." ECF No. 8 challenged service based on that disclosed method. On June 17, 2025, the Court gave UH 14 days to respond to the objection or withdraw the default application. Campbell filed ECF No. 10 the next day, renewing default through authorities involving materially different methods of service.

ECF No. 12 squarely challenged service, subject-matter jurisdiction, and the legal sufficiency of the Complaint. Campbell had an opportunity to defend those contentions on their merits, supply the missing authority, articulate a nonfrivolous basis for extending existing law, or withdraw or correct them. He passed on that opportunity. Instead of filing a memorandum in opposition, he later filed a motion seeking to strike the Rule 12 motion and again requesting entry of default, while representing that the motion had not addressed service or supplied contrary authority, although it had done both. ECF No. 12 at 3-4; ECF No. 13 at 4.

The Complaint independently implicates Rule 11(b)(1): it announced that "this filing is designed" to require advance judicial approval before Krudy could bring further lawsuits or charges, using the federal action itself as a means to deter future resort to courts and administrative processes.

## II. RULE 11 IMPOSES A CERTIFICATION EACH TIME A PAPER IS PRESENTED OR LATER ADVOCATED

Rule 11(b) provides, in pertinent part:

> By presenting to the court a pleading, written motion, or other paper - whether by signing, filing, submitting, or later advocating it - an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law.

Fed. R. Civ. P. 11(b)(1)-(2).

The certification attaches to the act of presenting the paper. *King v. Whitmer*, 71 F.4th 511, 531-33 (6th Cir. 2023). The Sixth Circuit applies an objective standard of reasonableness under the circumstances existing when the paper is presented and cautions against hindsight. *Mann v. G & G Mfg., Inc.*, 900 F.2d 953, 958 (6th Cir. 1990); *INVST Fin. Grp., Inc. v. Chem-Nuclear Sys., Inc.*, 815 F.2d 391, 401 (6th Cir. 1987). Rule 11 requires reasonable prefiling inquiry into law and fact and recognizes a continuing responsibility to review and reevaluate pleadings and, where appropriate, modify them to conform to the Rule. *Bojicic v. DeWine*, 145 F.4th 668, 671 (6th Cir. 2025). Rule 11(b) also applies when counsel later advocates a contention. Fed. R. Civ. P. 11(b).

For the Rule 11(b)(2) challenges, the question is whether, when each challenged paper was presented or later advocated, the certified legal contention was warranted by existing law or a nonfrivolous argument for changing it after an inquiry reasonable under the circumstances.

## III. ATTORNEY CAMPBELL PRESENTED A COMPLAINT THAT A REASONABLE PREFILING INQUIRY COULD NOT SUPPORT

By signing and filing the Complaint on February 19, 2025, Campbell certified after reasonable inquiry that its legal contentions were warranted by existing law or a nonfrivolous extension of it. The Complaint's stated jurisdictional theory, characterization of the prior dismissals, and authorities invoked did not support that certification.

### A. The pleaded § 1331 theory depended on statutes that presuppose independent jurisdiction

The Complaint alleged: "Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1331 because Plaintiff seeks declaratory and injunctive relief against Defendant pursuant to 28 U.S.C. § 1651 and 28 U.S.C. § 2201." Compl. ¶ 6.

Neither statute creates the jurisdiction on which it depends. Section 2201 authorizes declaratory relief only in a case already within federal jurisdiction; the Declaratory Judgment Act does not enlarge that jurisdiction. *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671-72 (1950). Section 1651 likewise authorizes writs only "in aid of" independently existing jurisdiction. *Syngenta Crop Protection, Inc. v. Henson*, 537 U.S. 28, 31-33 (2002). The pleaded proposition - that § 1331 jurisdiction existed because UH sought relief under §§ 1651 and 2201 - inverted those statutory prerequisites.

The counts supplied no different predicate. They alleged that the Court "has the ability" to declare Krudy vexatious and issue injunctive relief under §§ 1651 and 2201. Compl. ¶¶ 212, 234, 245. The Complaint identified no independent federal right belonging to UH, federal duty allegedly breached by Krudy, or existing federal judgment or injunction requiring enforcement. Reasonable prefiling inquiry into the very statutes invoked would have disclosed the defect; the

Complaint neither identified a different federal claim nor developed a nonfrivolous basis for extending existing law to create one.

**B. The Complaint represented that this action was "proper based on" a decision that did not support that proposition**

The Complaint next alleged that "[t]he Complaint is proper based on this Court's prior decision in *Conley v. Smith*, Case No. 5:08CV622, 2009 WL 5955989 (N.D. Ohio March 6, 2009)." Compl. ¶ 7. Campbell thus selected *Conley* as affirmative support for the action's propriety.

*Conley* was itself an original declaratory action in this District seeking to declare a former client vexatious and prohibit future federal filings. The *Conley* court required a jurisdictional basis, found no Article III controversy, dismissed the action, and stated that it would decline declaratory relief even if a controversy existed. *Conley v. Smith*, No. 5:08-cv-00622-JRA, ECF No. 27 at 1-5 (N.D. Ohio Mar. 6, 2009). Whatever factual distinctions might exist, *Conley* did not establish the proposition for which Campbell cited it: that UH could commence this freestanding action under §§ 1651 and 2201. A reasonable prefiling inquiry did not permit presenting *Conley* as authority making the Complaint proper.

**C. The Complaint materially broadened the preclusive effect of the February 23, 2024 order**

The Complaint alleged that the First and Second Lawsuits had been dismissed "on the merits." Compl. ¶ 146. It then asserted that the contemplated recommencement would be untimely, barred by res judicata, and frivolous. Compl. ¶¶ 151-155.

The February 23, 2024 order did not support that characterization. The order itself recited that the first action "was dismissed without prejudice." It then applied preclusion to the

previously decided pseudonym issue and expressly stated that, if Krudy wished to file an action against those defendants, he must do so under his legal name. It did not adjudicate the underlying employment claims or purport to bar their later assertion. *Koe v. Univ. Hosps. Health Sys., Inc.*, No. 1:24-cv-00024, ECF No. 6 at 1-2 (N.D. Ohio Feb. 23, 2024).

Nevertheless, the Complaint bearing Attorney Campbell's signature used the broader "on the merits" premise to assert that recommencement was barred by res judicata and would be frivolous. A reasonable prefiling inquiry required an accurate reading of the order on which those legal contentions depended. Whether limitations, res judicata, or the savings statute would affect a later action were questions to be adjudicated if and when those claims were presented. They did not supply UH with the basis for a claim for affirmative relief to be asserted here.

**D. The remaining cited authorities did not supply the missing jurisdictional or substantive predicate**

The remaining authorities established that courts may control abusive litigation in appropriate circumstances; they did not supply UH with a freestanding federal claim. *Sumbry*, *Filipas*, and *Wrenn* involved filing controls imposed or enforced against litigants already before the court. *Sumbry v. State of Indiana*, No. 4:06-cv-1322, 2006 WL 3420206 (N.D. Ohio Nov. 27, 2006); *Filipas v. Lemons*, 835 F.2d 1145, 1146 (6th Cir. 1987); *Wrenn v. Vanderbilt Univ. Hosp.*, 50 F.3d 11, 1995 WL 111480, at *3 (6th Cir. Mar. 15, 1995). *Lomaz* applied Ohio's vexatious-litigator statute in pending litigation. *Lomaz v. Ohio Dep't of Commerce, Div. of State Fire Marshal*, No. 5:03-cv-2609, 2005 WL 1126746 (N.D. Ohio Apr. 20, 2005).

*Riccard* likewise involved an injunction already entered in existing litigation; later filings allegedly violated or circumvented it, and Prudential sought contempt and expansion of that injunction. *Riccard v. Prudential Ins. Co. of Am.*, 307 F.3d 1277, 1295-99 (11th Cir. 2002). None

of these decisions treated § 1651 or § 2201 as an independent source of § 1331 jurisdiction or a private substantive claim. The missing predicate was consequential because the Complaint sought prospective restrictions extending beyond this Court to courts, agencies, disciplinary bodies, and law-enforcement authorities.

## IV. THE DEFAULT PAPERS PRESENT SEPARATE RULE 11(b)(2) VIOLATIONS

### A. Slezak sought default while his own declaration disclosed a service method outside the governing rules

On June 14, 2025, Slezak signed the Rule 55(a) application at ECF No. 7 and executed the supporting declaration at ECF No. 7-1. The application asserted that Krudy had been served and that his response deadline had expired. ECF No. 7 at 1-2. Slezak's declaration stated that the summons and Complaint were served "via process server to Defendant's P.O. Box." ECF No. 7-1 ¶ 6. The return at ECF No. 6 stated "DELIVERED TO POST OFFICE." By requesting entry of default on that record, Slezak certified that the disclosed service method was legally sufficient and that default was available.

The governing rules supplied no such method. Rule 4(e)(2) permits personal delivery, abode service, or delivery to an authorized agent. Rule 4(e)(1) incorporates state-law methods. Ohio Civ. R. 4.1 provides clerk-administered mail or carrier service and specified personal or residence service; N.D. Ohio L.R. 4.2 likewise provides a clerk-administered certified-mail mechanism. A P.O. Box may be a permissible address within an authorized method, but a postal employee is not thereby made the defendant or an authorized agent for service. Actual notice does not substitute for Rule 4 service. See *Bridgeport Music, Inc. v. Rhyme Syndicate Music*, 376 F.3d 615, 624 (6th Cir. 2004); *LSJ Inv. Co. v. O.L.D., Inc.*, 167 F.3d 320, 322-23 (6th Cir. 1999).

Slezak's own declaration disclosed the method on which default depended. A reasonable inquiry therefore required determining whether that method - not merely the post-office box address - satisfied Rule 4 and the incorporated Ohio rules. Those authorities supplied no basis for certifying that service was complete, the response period had expired, and default was available.

**B. After the Court gave UH 14 days to respond or withdraw, Campbell later advocated default through authorities addressing different methods of service**

ECF No. 8 identified the defect directly: delivery to a post-office box or postal intermediary was not personal, abode, agent, or court-authorized service, and actual notice did not cure the method. ECF No. 8 at 1-2. On June 17, 2025, the Court ordered UH to "respond to Defendant's arguments opposing entry of default or withdraw" the application by July 1. ECF No. 9 at 1. Although the Court afforded UH fourteen days to investigate the identified defect, respond, or withdraw, Campbell filed ECF No. 10 the next day.

ECF No. 10 continued to advocate default and asserted that "Ohio rules permit a party to serve a defendant with a copy of a complaint and summons at a P.O. Box registered to a defendant," citing *Porter*, *Davidson*, and *Bowman*. ECF No. 10 at 1-2. But *Porter* did not adjudicate the validity of a method of service; it mentioned service at a P.O. Box while deciding venue. *Davidson* involved certified mail. *Bowman* involved certified mail returned unclaimed followed by ordinary mail under Ohio Civ. R. 4.6(D). *Porter v. Chait*, 2012-Ohio-3696, ¶¶ 9-11; *Davidson v. West*, 2019-Ohio-224, ¶ 2; *Bowman v. DeMarco*, No. 2009-P-0020, 2009 WL 3418994, at *1 (Ohio Ct. App. Oct. 23, 2009). None involved the method disclosed here: a private process server delivering federal process to the post office for placement in a post-office box. At most, those cases show that a post-office box may be used as a service address for a method of service contemplated by the Ohio rules. They supplied no authority for treating a

private process server's delivery of federal process to the post office for placement in Krudy's P.O. Box as completed service on Krudy.

ECF No. 10 was therefore not merely a continuation of the original request. By later advocating default after ECF No. 8 and the Court's order, Campbell made a new Rule 11 certification. The authorities he supplied did not support the method that had actually been used and challenged. Campbell passed on the opportunity to supply authority for that method or a good-faith basis for extending existing law.

**C. Campbell passed on the opportunity to defend the challenged legal contentions and instead again sought default**

ECF No. 12 then squarely challenged service, subject-matter jurisdiction, and the legal sufficiency of the Complaint. Its service section cited Rule 4(e), Ohio Civ. R. 4.1, N.D. Ohio L.R. 4.2, and Sixth Circuit authority and explained the address-versus-method distinction. ECF No. 12 at 3-4. Campbell had an opportunity to defend the challenged contentions on their merits, supply the missing authority, articulate a nonfrivolous basis for extending existing law, or withdraw or correct them. He passed on that opportunity. ECF No. 13 instead moved to strike the Rule 12 motion and continued to request entry of default and default judgment on the Complaint.

ECF No. 13 also represented that the Rule 12 motion "fails to address this legal issue or otherwise advance authorities providing that service was not perfected." ECF No. 13 at 4. ECF No. 12 did both. Compare ECF No. 13 at 4 with ECF No. 12 at 3-4. That representation is significant because ECF No. 13 again advocated default without confronting the contrary authority facing counsel. By filing ECF No. 13, Campbell made another Rule 11(b)(2) certification that default remained legally warranted despite the service objection and contrary authority then squarely before him.

## V. THE COMPLAINT'S STATED OBJECTIVE AND SUBSEQUENT CHRONOLOGY SUPPORT A SEPARATE RULE 11(b)(1) IMPROPER-PURPOSE VIOLATION

The Rule 11(b)(1) theory rests on an identified improper purpose separate from the legal-sufficiency inquiry under Rule 11(b)(2). *King v. Whitmer*, 71 F.4th 511, 520-21 (6th Cir. 2023). Here, that evidence comes from the purpose the Complaint itself announced and the objective chronology that followed.

The Complaint states that "this filing is designed to require Defendant to get approval from this Court before filing further lawsuits or charges against UH or UH's employees or agents." Compl. ¶ 10. By February 17, 2025, Krudy had proposed a tolling agreement to avoid "unnecessary multiplication of the proceedings" during the pendency of ongoing federal appeals. Compl. ¶ 149. On February 18, he requested service-address information in preparation for filing in state court. UH commenced this action the next day in federal court before the contemplated state action was filed.

UH had a right to defend itself against claims and charges Krudy actually brought and to seek remedies authorized in those proceedings. Defending against claims actually brought is one thing; presenting a separate federal action for the purpose of deterring, interfering with, or suppressing resort to courts and administrative agencies is another. The distinction is between defending against litigation and using litigation itself as the means of coercing or suppressing the exercise of rights. In the distinct context of a bad-faith fee award, the Sixth Circuit distinguished attempting to prevail on a claim from using litigation as a mechanism to force a collateral result unavailable under governing legal principles. *First Bank of Marietta v. Hartford Underwriters Ins. Co.*, 307 F.3d 501, 524-25 & n.19 (6th Cir. 2002). *King* later relied on *First Bank* in applying Rule 11(b)(1)'s separate improper-purpose inquiry. 71 F.4th at 520-21.

The requested restrictions extended far beyond proceedings in this Court. UH sought advance approval before Krudy, or anyone acting on his behalf, could file any action, grievance, accusation, charge, or similar instrument against UH and a broadly defined class of related persons in courts, agencies, law-enforcement bodies, and attorney-disciplinary fora. Compl. ¶¶ 235-236. There was no existing merits judgment or injunction to protect or enforce; the February 23, 2024 order expressly contemplated a later action under Krudy's legal name. The filing itself was the mechanism by which UH sought to impose those restrictions. As to discrimination charges, that function tracks the deterrent harm identified in *Burlington Northern*: action that might dissuade a reasonable worker from making or supporting a discrimination charge. *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006). The Complaint's announced purpose thus reached protected discrimination-charge activity and sought to discourage that activity through the burden and coercive force of a separate federal action.

The subsequent state-court chronology confirms that deterrence was not incidental. On March 28, Campbell told the state court that the federal Declaratory Judgment Action "has not slowed down or otherwise deterred" Krudy and sought parallel restrictions requiring screening before future "lawsuits and/or charges." *Krudy v. Univ. Hosps. Health Sys., Inc.*, No. CV-25-112548, Mot. for Summ. J. at 4-5, 27 (Cuyahoga C.P. Mar. 28, 2025). Campbell thus evaluated the federal action by whether it had achieved the very deterrent effect Paragraph 10 announced. When the state court rejected that procedurally unavailable request on June 12 because no R.C. 2323.52 counterclaim had been pleaded, UH did not abandon the objective. *Id.*, Journal Entry (June 12, 2025). Two days later, UH sought default on the federal Complaint that requested those restrictions; after this Court required a response or withdrawal, Campbell renewed that default request on June 18. On June 26, UH pleaded the R.C. 2323.52 counterclaim the state court had

found missing and again sought prior leave or screening before Krudy could file "lawsuits and/or charges," including an injunction reaching actions, grievances, accusations, charges, and similar instruments in courts, agencies, law-enforcement bodies, and bar-disciplinary fora. *Krudy v. Univ. Hosps. Health Sys., Inc.*, No. CV-25-112548, Answer & Countercl. ¶¶ 236, 245-46 (Cuyahoga C.P. June 26, 2025). The procedural vehicles changed; the objective did not. UH continued to use litigation to deter protected discrimination-charge activity and restrict Krudy's resort to other courts, agencies, and fora. That is not ordinary defense of claims actually brought; it is use of a separate lawsuit to discourage access to the fora in which those claims and charges would be presented. That purpose is separate from the legal-sufficiency inquiry under Rule 11(b)(2) and supplies the improper purpose Rule 11(b)(1) requires.

## VI. ANY SANCTION IMPOSED SHOULD BE SUFFICIENT TO DETER REPETITION OR COMPARABLE CONDUCT

Rule 11 sanctions "must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated." Fed. R. Civ. P. 11(c)(4). The Sixth Circuit likewise directs courts to tailor the sanction to deterrence. *Jackson v. Law Firm of O'Hara, Ruberg, Osborne & Taylor*, 875 F.2d 1224, 1229-30 (6th Cir. 1989).

### A. Responsibility should track the Rule 11 certifications each attorney presented

Attorney Campbell signed and presented the Complaint and ECF Nos. 10 and 13 and is responsible for the Rule 11 certifications associated with those presentations and later advocacy. Attorney Slezak signed ECF No. 7 and executed ECF No. 7-1, the declaration describing the service method underlying the default request. Absent exceptional circumstances, Gordon Rees Scully Mansukhani, LLP is jointly responsible for a violation committed by its partner, associate, or employee. Fed. R. Civ. P. 11(c)(1).

UH's responsibility is narrower. Rule 11(c)(5)(A) bars monetary sanctions against a represented party for a Rule 11(b)(2) violation. Defendant therefore seeks no Rule 11(b)(2) monetary sanction against UH. UH's responsibility rests on the independently asserted Rule 11(b)(1) purpose theory.

**B. Campbell's recent sanctions history bears on what will suffice to deter comparable conduct**

In *AMG Peterbilt Group, LLC v. Apple Growth Partners, Inc.*, the trial court imposed a $104,171.27 joint-and-several sanction against Campbell and his client. The Eighth District affirmed as to Campbell, concluding that "no reasonable attorney would continue to pursue" the claims after the dispositive real-party-in-interest defect was known. The court emphasized that Campbell continued the litigation without meaningfully confronting that defect and agreed that he had "passed on the opportunity to make a good faith argument for the establishment of new law." *AMG Peterbilt Group, LLC v. Apple Growth Partners, Inc.*, 2025-Ohio-4754, ¶¶ 44-48. The court expressly distinguished that conduct from mere misjudgment or tactical error.

The timing is significant to deterrence. The *AMG* sanctions judgment had already been entered against Campbell on December 5, 2024, when he commenced this action on February 19, 2025. He filed ECF No. 10 while that sanction was on appeal. The Eighth District affirmed on October 16, 2025, and the Supreme Court of Ohio declined review on March 31, 2026. Campbell filed ECF No. 13 ten days later. By then, he had received both a substantial sanction and an appellate decision specifically addressing continued pursuit of claims after a dispositive defect had been identified without a meaningful legal answer.

**C. The sanction should be tailored to provide meaningful deterrence**

Defendant asks the Court to impose the sanction it finds sufficient to deter repetition or comparable conduct, including appropriate nonmonetary sanctions. *AMG* matters to that determination not as propensity evidence, but because it bears on what degree of sanction is likely to deter comparable conduct. Here, the challenged conduct likewise did not end with the initial pleading: Campbell later advocated default after the service defect had been identified and filed ECF No. 13 after ECF No. 12 squarely supplied the governing service and jurisdictional authorities.

Rule 11(c)(4) requires a sanction sufficient to deter repetition, not merely one sufficient to mark that a violation occurred. In light of the prior substantial sanction and the subsequent appellate affirmance addressing continued litigation after a dispositive defect had been brought into focus, a merely nominal sanction may not provide meaningful deterrence.

**CONCLUSION**

Defendant respectfully requests that the Court find the Rule 11(b)(1) and (b)(2) violations identified above and impose a sanction sufficient to deter repetition or comparable conduct.

Dated: September 28, 2026

Respectfully submitted,

[signature]

Defendant, pro se

Nicholas Krudy
PO Box 527
Novelty OH 44072-0527

Tel: (330) 732-5001
Email: john@johnkoe.org

## CERTIFICATION OF COMPLIANCE WITH FED. R. CIV. P. 11(c)(2)

I certify that the Motion for Sanctions Under Fed. R. Civ. P. 11 and accompanying Memorandum, in substantially the same form as filed herewith on September 28, 2026, were previously served on Plaintiff's counsel of record pursuant to Fed. R. Civ. P. 5. The Motion was not filed until more than twenty-four days after that prior service.

Nicholas Krudy

Defendant, pro se

**CERTIFICATE OF SERVICE**

I certify that the foregoing Motion, Memorandum, and Certification are being served on Plaintiff's counsel of record by electronic mail on September 28, 2026. Counsel will also receive electronic notice of the filing through the Court's CM/ECF system upon docketing.

Nicholas Krudy

Defendant, pro se